THE GRAND FRATERNITY, a corporation under the laws of the State of Pennsylvania, defendant below, plaintiff in error, *vs.* MARY C. KEATLEY, plaintiff below, defendant in error.

1. INSURANCE—APPLICATION—FALSE ANSWERS—WARRANTY.

At common law, false answers to questions in an application for life insurance vitiated the contract, without reference to the question of good faith or materiality; the answers being treated as literal warranties.

2. INSURANCE—LIFE POLICY—CONSTRUCTION—WHAT LAW GOVERNS.

Where a life insurance certificate provided that it should be construed according to the laws of Pennsylvania, where there was a statute (Act June 23, 1885 [*P. L.* 134] ) providing that no misrepresentation or untrue statement in an application made in good faith by the applicant shall effect a forfeiture or constitute a defense to the policy, unless the misrepresentation or untrue statement relates to a matter material to the risk, the determination of the question whether false answers in the application constituted a defense depended on the construction of such statute by the Supreme Court of Pennsylvania.

3. INSURANCE—APPLICATION—FALSE ANSWERS—EFFECT—DEFENSES.

Decedent applied for a certificate in defendant order insuring his life, and to obtain the same stated that he had not consulted a physician since childhood, when he had mumps. He also stated that he had never been subject to or had piles, bladder, gravel or kidney disease. The certificate was issued, and provided that it should be construed in accordance with the laws of Pennsylvania, and after decedent's death, in an action on the certificate, a physician testified that he had operated on decedent for piles within six or seven years. Another testified that in June, 1908, nine months before decedent signed the application, he had decedent under treatment for four weeks for

diabetes, and another testified that within six months prior to the application he had treated decedent for stomach trouble. *Held*, that such misstatements were material to the risk, within Act Pa. June 23, 1885 (*P. L.* 134), providing that misrepresentations shall not be a defense to a policy, unless material, and were therefore, a bar to plaintiff's recovery.

*(January* 22, 1913.)

CURTIS, Chancellor, and CONRAD and WOOLLEY, Associate Judges, sitting.

*Leonard E. Wales* for plaintiff in error.

*John Biggs* and *Armon D. Chaytor, Jr.*, for defendant in error.

Supreme Court, January Term, 1913.

WRIT OF ERROR (No. 1, June Term, 1912) to the Superior Court in and for New Castle County—(No. 45, May Term, 1911, below. 2 *Boyce* 267, 82 *Atl.* 294).

Action in covenant brought by Mary C. Keatley against The Grand Fraternity, a corporation of Pennsylvania, to recover the amount of a death benefit certificate of membership, alleged to have been issued to plaintiff's husband in his lifetime, payable to said plaintiff upon her husband's death. Verdict for plaintiff for two thousand two hundred and fifty-seven dollars, and the defendant brings error. Judgment reversed, but the defendant, having by its plea of tender admitted its indebtedness to the plaintiff in the amount of one hundred and ninety dollars and thirty-six cents, representing dues or premiums paid by the deceased to the defendant, and costs of the cause then incurred, the court below, on motion of the plaintiff, shall enter judgment for the plaintiff for that amount, and against the plaintiff for all costs incurred subsequent to the filing of said plea, including the costs in this court.

ARGUMENT ON THE LAW BY COUNSEL FOR PLAINTIFF IN ERROR.

The material issue is with respect to the act of June 23, 1885 (*Pa.*) *p.* 134, which was invoked by the plaintiff below to prevent the defeat of her claim under the benefit certificate, issued to her husband.

In any case where this statute is sought to be applied two things must affirmatively appear, viz.: (1) The good faith of the applicant; and (2) a representation or statement relating to some matter not material to the risk.

It is well settled that every fact in an insurance application is material, which increases the risk, or which, if disclosed, would have been a fair reason for demanding higher premium. The test of the materiality of a misrepresentation or concealment, is that it influences the insurer in determining whether to accept the risk or not. *May on Insurance*, 184; *Hartman v. Insurance Co.*, 21 *Pa.* 466; *McCaffrey v. Knights*, 213 *Pa.* 609, 612, 63 *Atl.* 189.

If Keatley had made truthful answers to the questions here involved—which under both moral and legal obligations he was bound to do, but which the evidence clearly shows he did not do —the benefit certificate would not have been issued, because he would have been rejected as an undesirable risk. *March v. Insurance Co.*, 186 *Pa.* 629, 642, 40 *Atl.* 1100, 65 *Am. St. Rep.* 887 (1898).

The principle has been repeatedly recognized and upheld by the courts of last resort in Pennsylvania (in which the act of 1885 was involved) that, where the evidence is either uncontroverted that the insured made false answers to questions about his last consulting a physician and as to the absence of specific diseases, or the evidence is of such a conclusive character that it would be impossible to sustain a verdict rendered in opposition to it, it is error to submit the case to the jury. *Murphy v. Insurance Co.*, 205 *Pa.* 444, 450, 453, 55 *Atl.* 19 (1903).

In *Priestly v. Sav. Co.* (*C. C.*) 112 *Fed.* 271, where an applicant stated that he was last attended by a physician "in 1869", and named Dr. Houghton as the physician and the complaint as "scarlet fever", the court held that the statement was both a warranty and a representation material to the risk.

In *Hews v. Society*, 143 *Fed.* 850, 853, 74 *C. C. A.* 676, 679 (1906), the insured stated in his application, *inter alia:* "Nor have I been intemperate, or had any serious illness or disease, except diseases incident to childhood." The policy was dated November 9, 1903, and the evidence showed that in 1896 the insured had admitted to one Morgan that he then had diabetes.

There was other evidence tending to show that he continued to have this disease up to the time of his application, and also used alcoholic beverages, and the court held that the defendant was entitled to binding instructions.

In *Mengel v. Insurance Co.*, 176 *Pa.* 280, 281, 35 *Atl.* 197 (1896) the questions for the applicant and his answers thereto were as follows: "How long since you have consulted any physician? For what disease? Give name and residence." Answered: "About one year, for light influenza, Dr. James W. Keiser, Reading, Pa." The evidence clearly showed that, during the five years preceding the death of the insured, a doctor had attended him for vomiting and nausea, the effects of overdrinking, and had even attended him within four months preceding the application. The court held that the facts showed a breach of a material warranty as to require the court to pronounce upon it as a matter of law. The judgment for the plaintiff below was reversed, and judgment directed for the defendant. *Doll v. Insurance Co.*, 138 *Fed.* 705, 708, 71 *C. C. A.* 121 (*N. J.* 1905); *McClain v. Provident etc., Society*, 110 *Fed.* 80, 49 *C. C. A.* 31, distinguished.

If any disease confined Keatley to his bed, or seriously affected his physical condition, for the time being only, it would be a material fact, requiring disclosure, according to the established doctrine in Pennsylvania.

The following cases were cited: *Lutz v. Insurance Co.*, 186 *Pa.* 527, 40 *Atl.* 1104 (1898); *Hartman v. Insurance Co.*, 21 *Pa.* 466; *Murphy v. Insurance Co.*, 205 *Pa.* 452, 55 *Atl.* 19; *Smith v. Insurance Co.*, 196 *Pa.* 314, 316, 319, 46 *Atl.* 426 (1900); *Meyers v. Woodmen*, 193 *Pa.* 470, 474, 44 *Atl.* 563 (1893); *Wall v. Society*, 179 *Pa.* 355, 366, 36 *Atl.* 748 (1897); *Society v. O'Hara*, 120 *Pa.* 256, 260, 13 *Atl.* 932; *Baldi v. Insurance Co.*, 24 *Pa. Super. Ct.* 275, 290, 292; *Carson v. Insurance Co.*, 1 *Pa. Super. Ct.* 572, 577; *Association v. McDaniel*, 25 *Ind. App.* 608, 57 *N. E.* 645, 648; *Boland v. Association*, 74 *Hun.* 385, 26 *N. Y. Supp.* 433, 444; *Baumgart v. Woodmen*, 85 *Wis.* 546, 549, 55 *N. W.* 713; *Jeffrey v. Golden Cross*, 97 *Me.* 176, 53 *Atl.* 1102; *Insurance Co. v. Schmidt (Ky.)* 93 *S. W.* 1055; *Insurance Co. v. France*, 91 *U. S.* 510, 23 *L. Ed.* 401.

Argument.

The court below erred, not only in submitting to the jury the several questions already indicated, but in the unqualified use of the phrases "at the time of making his application" and "at the time he made his application." *Baldi v. Insurance Co.*, 24 *Pa. Super Ct.* 275, 292 (1904); *Rondinella v. Insurance Co.*, 24 *Pa. Super Ct.* 293, 302 (1904); *Connell v. Insurance Co.*, 16 *Pa. Super. Ct.* 520, 529 (1901); *Beard v. Royal Neighbors*, 53 *Or.* 102, 99 *Pac.* 83, 19 *L. R. A.* (*N. S.*) 798, 17 *Ann. Cas.* 1199.

The doctrine established by the Pennsylvania cases, as well as by those of other jurisdictions, with respect to the question, "When and by what physician and for what complaint were you last attended?" or "When and for what complaint did you last consult a physician?" does not relate to a condition of health, or mean that it was requisite or proper to consult a physician about any particular disorder. The question of disease is wholly separate and distinct from the question of consultation. *Society v. O'Hara*, 120 *Pa.* 256, 260, 13 *Atl.* 932; *Baldi v. Insurance Co.*, 24 *Pa. Super. Ct.* 275, 290, 292; *Caruthers v. Insurance Co.* (*C. C.*) 108 *Fed.* 487, 491; *Roche v. Lodge*, 21 *App. Div.* 599, 601, 47 *N. Y. Supp.* 774; *Insurance Co. v. McTague*, 49 *N. J. Law*, 587, 592, 9 *Atl.* 766, 60 *Am. Rep.* 661; *Insurance Co. v. Arhelger*, 4 *Ariz.* 271, 36 *Pac.* 895, 896; *Beard v. Royal Neighbors*, 53 *Or.* 102, 99 *Pac.* 83, 19 *L. R. A.* (*N. S.*) 798, 17 *Ann. Cas.* 1199; *Dwyer v. Insurance Co.*, 72 *N. H.* 572, 575, 58 *Atl.* 502; *Insurance Co. v. Schmidt* (*Ky.*) 93 *S. W.* 1055; *Association v. Edwards*, 159 *Fed.* 53, 54, 86 *C. C. A.* 243; *McDermott v. Woodmen*, 97 *Mo. App.* 636, 71 *S. W.* 833, 838.

Upon the point of an apparent contradiction in the testimony, the following cases are cited: *Association v. Edwards*, 159 *Fed.* 53, 54, 86 *C. C. A.* 243; *Meyers v. Woodmen*, 193 *Pa.* 470, 474, 44 *Atl.* 563; *Jeffrey v. Golden Cross*, 97 *Me.* 176, 53 *Atl.* 1102; *Hubbard v. Association*, 100 *Fed.* 719, 723, 726, 40 *C. C. A.* 665; *Boland v. Association*, 74 *Hun.* 385, 26 *N. Y. Supp.* 433, 444.

ARGUMENT ON LAW BY COUNSEL FOR DEFENDANT IN ERROR.

Practically all of the contentions of the plaintiff in error depend upon the construction and application to be placed upon

and given to *section* 1 of the Pennsylvania statute of June 23, 1885, which was pleaded by the plaintiff below.

The purpose of this statute has been judicially determined by the Supreme Court of Pennsylvania, in the case of *Hermany v. Life Association*, 151 *Pa*. 17, 24 *Atl*. 1064.

This case is law in Pennsylvania.

In the case of *Life Association v. Miller*, 92 *Fed*. 63, 34 *C. C. A*. 211, the Circuit Court of Appeals for the Fourth Circuit, considering this statute and one exactly like it in Maryland, said: "We have examined the two recent cases in the Supreme Court of Pennsylvania on this subject to which our attention was called, of *Lutz v. Insurance Co.*, 186 *Pa*. 527, 40 *Atl*. 1104, and *March v. Insurance Co.*, 186 *Pa*. 629, 40 *Atl*. 1100, 65 *Am. St. Rep*. 887, in which the act of the twenty-third of June, 1885 (*P. L*. 134), * * * is further considered. * * * We do not see anything in either of these decisions which changes or materially alters the doctrine laid down in the case of *Hermany v. Association, supra*, so far as affects this case. * * * "

The case of *Insurance Co. v. Mechanics' Savings Bank*, 72 *Fed*. 413, 418, 19 *C. C. A*. 286, 38 *L. R. A*. 33, 70, had this particular statute under consideration.

If William J. Keatley made any "misrepresentation or untrue statement," there are two points involved:

*First*. Was it material to the risk? *Second*. If it was immaterial to the risk, was it made in good faith?

Most of the cases hereinafter cited involve both points. *Cushman v. Insurance Co.*, 70 *N. Y*. 77, cited with approval in the case of *Barnes v. Insurance Co.*, 191 *Pa*. 618, 43 *Atl*. 341, 45 *L. R. A*. 264, citing *Life Association v. Gillespie*, 110 *Pa*. 84, 1 *Atl*. 340.

When the insurer claims the questions were falsely answered, it becomes a matter of "judicial investigation, in the ordinary way, of whether the particular statement alleged to be untrue or a misrepresentation was material to the risk." *Life Association v. Miller, supra; Insurance Co. v. Mechanics' Savings Bank & Trust Co., supra*.

In the case of *Keatley v. Insurance Co.*, 187 *Pa*. 197, 40 *Atl*. 808, the applicant having answered "that he had never had any

other illness, local disease or personal injury", there was some evidence that for two years before the application he suffered from headaches, especially after eating, and that there was some irregularity of the heart.  The court held that, if the jury found these facts in favor of the defendant, it was still for them to determine whether they were material to the risk.  *Dietz v. Insurance Co.*, 168 *Pa.* 504, 32 *Atl.* 119, *Barnes v. Insurance Co.*, 191 *Pa.* 618, 43 *Atl.* 341, 45 *L. R. A.* 264.

In *Hermany v. Life Association*, 151 *Pa.* 17, 24 *Atl.* 1064, it appears that the insured had warranted that he had no disease of the genital or urinary organs.  This is probably the leading case in Pennsylvania upon the statute in question.  It is repeatedly cited, and was followed in *McClain v. Assur. Soc.*, 110 *Fed.* 80, 49 *C. C. A.* 31; *Life Ass'n v. Miller*, 92 *Fed.* 63, 34 *C. C. A.* 211; *Insurance Co. v. Mechanics' Savings Bank & Trust Co.*, 72 *Fed.* 413, 19 *C. C. A.* 286, 38 *L. R. A.* 33, 70 (all three cases in the Circuit Court of Appeals); *Smith v. Insurance Co.*, 183 *Pa.* 504, 38 *Atl.* 1088; *March v. Insurance Co.*, 186 *Pa.* 641, 40 *Atl.* 1100, 65 *Am. St. Rep.* 887; *Keatley v. Insurance Co.*, 187 *Pa.* 205, 40 *Atl.* 808.

There is no difference between a false statement as to an ailment which is not material to the risk and a false statement as to the attendance of a physician for an ailment that is not material to the risk.

The rule as to nondisclosure of medical attendance for nonserious ailments is aptly put in 26 *Cyc.* at *page* 817.

The question of attendance of a physician is, like questions as to previous health or previous diseases, asked for the purpose of finding out the soundness of the health of the applicant.  *Aid Soc. v. O'Hara*, 120 *Pa.* 256, 13 *Atl.* 932; *Smith v. Insurance Co.*, 183 *Pa.* 504, 38 *Atl.* 1038, and *McClain v. Assur. Soc.*, 110 *Fed.* 80, 49 *C. C. A.* 31.

*McClain v. Assur. Soc.* 110 *Fed.* 80, 49 *C. C. A.* 31, was decided on two grounds: *First*, whether under a construction of the terms of the application and policy the answers were warranties or representations; and, *second*, irrespective of the first question, the case was decided under the act of 1885.

The cases of *Life Ass'n v. Miller*, 92 *Fed*. 63, 34 *C. C. A*. 211, and *Keiper v. Assur. Soc.* (*C. C.*) 159 *Fed*. 206, are to the same effect, and in the latter case the *Smith case*, 183 *Pa*. 504, 38 *Atl*. 1014, is cited with approval, and the *March case*, upon which the plaintiff in error largely relies, is considered in the application of the Pennsylvania law to issues similar to those of the case at bar.

While the decisions in Maryland are not controlling, yet the construction placed upon the Pennsylvania act or an act exactly like it in that state may be of assistance to the court. *Life Ass'n v. Ficklin*, 74 *Md*. 172, 21 *Atl*. 680, 23 *Atl*. 197; *Casualty Co. v. Gehrmann*, 96 *Md*. 634, 54 *Atl*. 678; *Dulany v. Casualty Co.*, 106 *Md*. 17, 66 *Atl*. 614.

And in the case of *Insurance Co. v. Mechanics' Savings Bank & Trust Company*, 73 *Fed*. 653, 19 *C. C. A*. 316, 38 *L. R. A*. 38, 70, upon a petition for the rehearing of the case already cited, Judge Taft said:

"The Pennsylvania statute, which controlled the construction of the policy, provided, in effect, that no misrepresentation in the application should avoid the policy, unless it was either made in bad faith or was material to the risk."

The learned counsel throughout their argument have fallen into the error of assuming that the testimony produced at the trial in behalf of the defense was uncontradicted and the credibility of their witnesses unquestioned.

Considering the whole charge of the court below, it was unquestionably left to the jury to determine from the evidence whether any of the alleged misstatements were material to the risk, or, if immaterial, whether they were made in good faith.

In *Baldi* and *Rodinella cases*, in 24 *Pa. Super. Ct.*, the facts were that the insured had been treated for angina pectoris, alleged to have been cured, but it was proved that it was the symptom of a diseased and incurable condition of the heart; the insured died of angina pectoris, the same disease.

The facts in the principal cases cited on the other side will show substantial distinctions between these cases and the one at bar.

Ordinarily questions of good faith and materiality are for the

jury and where the materiality of a statement to the risk involved, is itself of a doubtful character, its determination should be submitted to the jury.

The trial court properly construed the act of 1885, and submitted the case to the jury after a fair and impartial charge.

CONRAD, J., delivering the opinion of the court:

This is an action in covenant, brought by Mary C. Keatley, the plaintiff, against the Grand Fraternity, a corporation of the State of Pennsylvania, the defendant, to recover the sum of two thousand dollars, on a death benefit certificate of membership, alleged to have been issued by the defendant, on the eighteenth day of March, A. D. 1909, to William J. Keatley, husband of the plaintiff, in his lifetime, payable upon satisfactory proofs of the death of the member to Mary C. Keatley, the plaintiff.

The application made by the deceased contained the following provision: "And as this application is made to, and any certificate or certificates issued herein will be issued by the Grand Fraternity at its general offices in the City of Philadelphia, I do hereby agree that this application and the certificate or certificates issued hereon, and the said charter, constitution, statutes, by-laws, rules and regulations of the Grand Fraternity, shall always be construed under and according to the laws of the State of Pennsylvania."

[1]  At common law it is well settled that false answers to questions in an application for insurance vitiate the contract, the answers being taken as literal warranties. The answer being proven false is itself sufficient to void the contract, even though the answer was made in good faith and regardless of the materiality either of the question or answer to the risk.

In Pennsylvania an effort has been made to modify the common-law rule by a statute passed June 23, 1885, which reads as follows: "Whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any

policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk."

[2]   In the case now before us the real question is to ascertain what construction has been put upon the foregoing statute by the courts of Pennsylvania, and to follow as fully as we can, the decisions of those courts. In so doing we have encountered decisions that seem to be contradictory and which it is difficult to reconcile.

In *Mengel v. Northwestern Life Ins. Co.*, 176 *Pa.* 280, 35 *Atl.* 197 (1896), the insured in his application swore that he had always been temperate, and that the only consultation by a physician was about a year before for light influenza.  The evidence produced at the trial showed that for five years prior to the applicant's death a physician had attended the applicant more than once for vomiting and nausea, the effects of overdrinking, the last attendance being within four months prior to the application. On writ of error the Supreme Court held that the undisputed facts showed such breach of a material warranty as to require the court to direct a verdict for the defendant, and reversed the judgment of the court below.

In *March v. Metropolitan Life Ins. Co.*, 186 *Pa.* 629, 40 *Atl.* 1100, 65 *Am. St. Rep.* 887 (1898), the *Mengel case* was upheld, and the court after a full review of all prior cases on the subject, held that it was never intended by the act of 1885, nor did that act assume, to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false in fact.  It being shown in the *March case* by uncontradicted evidence that the answers of the insured were absolutely false as to having no serious ailments, and as to attendance by a physician, the Supreme Court held that it was the duty of the trial court to direct a verdict in favor of the insurance company.

In *Lutz v. Metropolitan Ins. Co.*, 186 *Pa.* 529, 40 *Atl.* 1104 (1898), the *March case* was cited with approval and upheld.  In the *Lutz case* the insured had averred in his application that he had never had spitting of blood, that he was never sick, that he

had never been confined to the house by sickness, and that one month before his application he had been attended by a physician for a cold that was cured, and that he had not been attended by any other physician.

The appeal court said: "It was clearly proved on the trial by evidence altogether uncontradicted and undisputed that every one of the foregoing answers was absolutely false.    *    *    *    As a matter of course, there could not be any doubt that previous spitting of blood, or illness, or confinement to the house by reason of illness, or medical service, or the attendance of the physicians, or having consumption, were subjects of the most serious and material character, and they have always been so held by the court." It was, therefore, error for the court below to submit the materiality of the answers to the jury, and ordered the judgment below, in favor of the plaintiff, reversed.

In *Murphy v. Prudential Ins. Co.*, 205 *Pa.* 447, 453, 55 *Atl.* 19, 23 (1903), in an exhaustive opinion by Mestrezat, Justice, the Supreme Court commend and uphold the ruling of the court in the *Mengel, March* and *Lutz cases*, and the question as to when the materiality of the risk should be submitted to the jury, and when the materiality must be declared by the court, was learnedly discussed by the court in its opinion, and its conclusions would seem to settle the question in Pennsylvania. The following quotation is taken from the court's opinion in the *Murphy case:*

"We have held it to be error to submit the case to the jury where the uncontroverted evidence shows that the insured made false answers to questions as to when insured was last attended by a physician and for what cause, how long since he had consulted a physician and for what disease, and as to whether he had ever been sick, had any serious illness, had ever consulted a physician, had ever had spitting of blood, did not have consumption, was insured in any other company, had applied for insurance in any other company and been rejected, had always been temperate, had had any medical attendance within the year prior to the application, and if so, state disease and give name of physician. It has always been held that the court must declare as material a false statement to a request that the insured give full particulars

of any illness he might have had, and also an untrue statement that no life insurance company had declined or postponed an acceptance of a proposal to insure applicant's life. In each instance it was held to be the duty of the court to pronounce the answer material to the risk.

"Under the interpretation placed upon the act of 1885 by the numerous decisions of this court, it is clear that the statements or answers made by the insured in the case, alleged by the defendant to be false, relate to matters material to the risk. The statements were made in reply to questions asked for the evident purpose of ascertaining the true condition of the applicant's health at the time of the delivery of the policy and prior thereto. The acceptance or rejection of the risk, as well as the rate of the premium, would depend on the information elicited by the questions. If the applicant was in bad health, it needs no argument to show that the risk to the company would have been increased, and would, therefore, have been rejected or a greater premium would have been demanded. The answers to the other questions were equally material to the defendant company. A truthful response to any of the questions was a prerequisite to intelligent and safe action by the defendant in passing upon the application of the insured."

[3] The questions and answers relied upon by the defendant below to avoid the certificate were:

*First.* To the question, "When and for what complaint did you last consult a physician?" the deceased answered, "Not since childhood,—mumps."

*Second.* To the question, "Has your weight recently increased or diminished?" the answer given by deceased was, "No."

*Third.* To the question, "Have you ever been subject to or had piles, bladder, gravel or kidney disease?" the deceased answered, "No."

In refutation of the above answers, the defendant below called three physicians to prove that they had attended the insured. Dr. Millard F. Cochran testified that some six or seven years prior to the death of the insured he attended him for piles;

that he operated upon and cured him, the treatment extending over a period of a week or ten days. Dr. Irving L. Chipman testified that Keatley came to his office on June 1, 1908 (about nine months before signing application for insurance in defendant company), and in reply to the doctor's inquiries gave him a full description of his complaint, which the doctor diagnosed as diabetes mellitis. Dr. Chipman further testified that Keatley came to his office twice a week for the four succeeding weeks, that he believed that Keatley had diabetes and prescribed for him for that disease, and that he made several examinations of his urine, which showed large deposits of sugar; the doctor being clearly of the opinion that Keatley was suffering with diabetes. He so informed Keatley. Dr. Alfred-L. Kelley testified that in the fall of 1908, within six months of the signing of the application, Keatley called at his office and he prescribed for him for a slight distress in the stomach, an immaterial ailment, and only one call was made and one prescription given.

The testimony of these three physicians, unbroken on cross-examination, clear and positive as to facts, proves the absolute falsity of the statement made by Keatley in his application for insurance in defendant company, wherein he stated, averring it to be true, that he had not consulted a physician since childhood; his last and only disease being mumps.

Keatley in his application also averred that he had not been subject to or had piles, bladder, gravel, or kidney disease. The testimony of Dr. Chipman positively and unmistakably shows that he attended Keatley eight times in a month within a year, before his application, for diabetes, a disease of the kidneys. While the ailment for which Dr. Kelley treated Keatley was trifling and unimportant, the testimony of Dr. Kelley is conclusive that he was the third physician who was consulted by Keatley within a comparatively few years of his application to defendant company, thereby proving false the averment of Keatley that he had not consulted a physician since childhood. The courts have always sought to guard with zealous care the *bona fides* of a contract. In a contract of insurance there should be the utmost good faith between the applicant and the insurer, and, as before

stated, under the common law the rule has been universally set-
tled that false answers upon the part of an applicant will void or
vitiate the contract. In the case at bar the testimony is most clear
and convincing that Keatley in his application made statements
that were positively untrue. The evidence of Doctors Corkran,
Chipman and Kelley was straightforward, and their testimony
establishes in a way that cannot be gotten rid of the fact that
Keatley had been attended by three physicians within six or
seven years of the time of making the application. The company
was entitled to true answers to its inquiries. Upon those answers
its contract was based. The company necessarily relied upon the
answers to ascertain the prior condition of the applicant's health.
It is most important and material that the company should be
informed as to what diseases the applicant had previously been
attended for by physicians in order that an intelligent conclusion
could be reached as to the desirability of the applicant as a risk.

If the defendant company had been informed that within a
year before the application was made Keatley had been examined
by a physician and told that he had diabetes, it would undoubtedly
have resulted in his application for insurance being summarily
refused. If the defendant company had been informed that three
physicians, within six years, had attended Keatley, does any one
doubt that it would have put the defendant on guard and led to
the making of a further investigation as to the general health of
the applicant?

The defendant company was entitled to this information,
and the applicant was in all fairness and good faith bound to give
truthful answers to the inquiries contained in the application.

His failure to do this was such a matter of wrongdoing that
he thereby put himself in a position that precludes his beneficiary
from recovering on the certificate.

By the analysis made by this court of the Pennsylvania
cases upon the Pennsylvania statute, that controls this contract,
we are constrained to hold that the answers of the insured in his
application, commented on above, were warranties, and that the
misrepresentations or untrue statements made by Keatley therein
respecting consultation of physicians were clearly and unmistak-

ably matters material to the risk, and should have been so declared by the court below; therefore, judgment reversed, but the defendant, having by its plea of tender admitted its indebtedness to the plaintiff in the amount of one hundred and ninety dollars and thirty-six cents, representing dues or premiums paid by the deceased to the defendant, and costs of the cause then incurred, the court below, on motion of the plaintiff, shall enter judgment for the plaintiff for that amount, and against the plaintiff for all costs incurred subsequent to the filing of said plea, including the costs in this court.

Whereupon counsel for the defendant in error applied for a rehearing on the ground that the court in reaching its opinion had misapprehended some of the evidence as well as the bearing of the decisions of the Supreme Court of the State of Pennsylvania upon the statute of that state relative to the materiality of risk. The motion for a rehearing was granted and upon that motion argument was heard on April 21, 1913, and at the June Term following the court announced its decision.

CONRAD, J., delivering the opinion of the court:

The argument at the rehearing disclosed nothing that convinced the court that in its former determination it had misapprehended the evidence or misinterpreted the law applicable to this case.

Let a decree be prepared in accordance with the opinion of the court.