Bell v. Kyle, 27 N. M. 9.

[No. 2345. Sept. 2, 1920.]

BELL v. KYLE et al.

## SYLLABUS BY THE COURT

1. Ordinarily the findings of fact of the trial court will not be disturbed when they are supported by any substantial evidence. P. 11

2. The evidence of a witness to an admission of notice of a fact which, if received prior to a purchase of land would prevent the party from rescinding the transaction on the ground of fraudulent representations, and which, if received after the purchase and payment of the purchase price, would not affect his right, was properly disregarded by the court as immaterial, where the witness failed to be able to show that the notice was received prior to the purchase. P. 12

3. A question not raised in the court below will ordinarily not be considered here. P. 13

4. Where a vendor takes a vendee to a spring and falsely and fraudulently represents to the vendee that the spring is upon the land to be conveyed, and the vendee is ignorant of the facts, and could ascertain them only by survey of the land, and where there are no circumstances present calculated to arouse the suspicions of the vendee, he is entitled to rely upon the representations, and may rescind the contract and recover the purchase price paid upon discovery of the fraud. P. 13

Appeal from District Court, Dona Ana County; Medler, Judge.

Action by H. G. Bell against Rose Kyle and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Young & Young, of Las Cruces, for appellants.
Mark B. Thompson, of Las Cruces, for appellee.

## OPINION OF THE COURT

PARKER, C. J. This is an action brought by the appellee, H. G. Bell, against the appellants, Rose Kyle and W. J. Kyle. It is alleged in the complaint that the appellee entered into negotiations with the appellants for the purchase of a certain tract of land; that the appellant W. J. Kyle, husband of the appellant Rose Kyle, acting as agent for said Rose Kyle, represented and stated to the appellee that a certain spring of water, situated at and near a cer-

tain ranch house, was situated upon the property of the appellant Rose Kyle, and that such property was designated by the public surveys as the west ½ of the northeast ¼ and the north ½ of the northwest ¼ of section 15, in a certain township and range; that appellee, relying upon said representations, purchased the said land, and paid therefor the sum of $3,000; that the representations aforesaid, as to the location of the said spring of water, were falsely and fraudulently made; that the appellee was unaware of the falsity of said representations, and relied solely upon the same in the purchase of said land; that in truth and in fact the said spring of water was situated in section 2 of the same township, and about two miles from the land conveyed to the appellee by the appellants; that thereafter, as soon as the appellee learned of the true location of said spring of water, he offered to reconvey the premises to the appellants, and demanded of them the purchase price thereof, which said offer and demand the appellants refused. The appellee tendered the deed for cancellation, and offered to reconvey to the appellants. He prayed for the recovery of the purchase price and for the cancellation of the conveyance, and for general relief.

The appellants answered, admitting the conveyance and payment of the purchase price of $3,000. They denied, in toto, the false and fraudulent representation and averred that the appellee well knew at the time of said purchase that the said spring was not upon the lands which he purchased. They interposed a second defense, to the effect that at the time of the transaction set out in the complaint there was also assigned to the appellee a lease upon 3,844 acres of land, and a sale to him by the appellants of 125 head of cattle, and that the said sale of cattle and said assignment of said lease were made upon the express condition that the plaintiff would purchase the land in section 15, above described; that said lease was of the value of $1,500, and that

appellee still held and retained the possession thereof.

Appellee replied, admitting the assignment of the lease to him and tendering assignment thereof to the appellants; he denied all other allegations of the answer.

The case was tried to the court without a jury, and resulted in a judgment for appellee. The court canceled the deed and the contract between the parties was ordered to be rescinded. The court also gave judgment for the purchase money. The court further canceled and ordered the assignment of the lease to be surrendered and delivered to the appellants. From this judgment appellants have appealed.

Counsel for appellants have discussed the assignments of error under several heads, which will be considered in the order in which they appear in the briefs.

[1] The first proposition argued in the briefs is to the effect that fraud will never be presumed, and cannot be established except by strong and satisfactory proof. It is argued under this proposition that the proof in this case did not even preponderate in favor of the appellee, and it is assumed that the court, in order to find for the appellee, must have indulged in a presumption that the transaction was fraudulent. We fail to follow the argument, or to understand the application of the cases cited. It is to be assumed that fraud will never be presumed, and that the burden of establishing the same rests upon him who asserts it, and that the proof must be clear and convincing. But in this case three witnesses testified for the appellee, and three witnesses testified for the appellants. The judge saw and heard the witnesses testify, and, sitting as a jury, it was within his province and duty to determine the truth of the matters controverted. He believed the witnesses for the appellee who testified that the

false and fraudulent representation was made, and induced the purchase of the land and the payment of the purchase price. It is familiar law in this jurisdiction that the verdict of a jury, or the findings of the trial court, will not be disturbed when they are supported by any substantial evidence. This has been the rule since Candelaria v. Miera, 13 N. M. 360, 84 Pac. 1020.

[2] During the introduction of the testimony a witness by the name of Chaves was on the stand, and was being examined as to a certain conversation with the appellee which he had had about June 1st, in which the witness stated that the appellee had admitted to him that the appellants had explained about the spring not being upon the land conveyed. ·The witness was unable to say that the appellee had admitted that the appellants had informed him about the spring not being on the land before the trade was made in March, prior to the alleged conversation. At the close of the testimony a motion was made by counsel for appellee to strike the evidence of the witness out as immaterial. The court, in ruling upon the motion, said:

"This last part of the conversation I will let in, but I won't consider any part of it: I will let it stay in the record."

Counsel for appellants argue that this action of the court was erroneous, because the evidence tended to corroborate the testimony of appellants and to contradict the testimony of appellee in the case. The objection to the testimony was that it was immaterial. It is to be remembered that the transaction was had in March, and the conversation testified about by the witness was had in June, after the damage had been done to the appellee. It appears elsewhere in the testimony that the appellee did confront appellants with the fact that he had been defrauded, and that the spring was not on the land which he had purchased from them, but that he ascertained those facts after he had paid the

purchase price. It might well be that the witness, Chaves, had the conversation about which he testified, but so long as the admission did not relate to information acquired by the appellee from the appellants prior to the time he made the purchase, the testimony of the witness Chaves was entirely immaterial. For this reason there was no error in the action of the trial court.

[3] Appellee failed to attach to his complaint a copy of the deed, a cancellation of which, and recovery of the purchase price, were the subject-matter of the action. Upon his offering the deed in evidence, objection was interposed upon this ground, whereupon the court announced that he would allow the introduction of the deed and would allow a trial amendment and consider the same as made. To this action by the court no objection was interposed. In other words, the action of the court in allowing the trial amendment and considering it as made, thus authorizing the introduction of the deed, was in no way questioned by counsel for appellants in the court below. For this reason the error, if any, is not available.

[4] The last and most important question raised by counsel is as to when, and when not, a vendee may rely upon representations by the vendor as to location of and improvements upon land. The proposition put forward by appellants is that a vendee may not rely upon false representations as to the location of, or improvements upon, land where the means of knowledge are equally open to both parties. The law requires contracting parties to be vigilant and to exercise due caution, and if the means of information are alike accessible to both, so that, with vigilance, prudence, and diligence the parties might respectively rely upon their own judgment, they must be presumed to have done so. Whatever might be said as to the accuracy of the proposition as applied to other circumstances, it is not deemed to have application to the facts in this

case. A brief review of the circumstances attending the transaction, as they appear from the testimony, will be enlightening. The appellee and his brother, who, as agent, opened the negotiations, were strangers to the property. The appellants at that time well knew that the spring was not on section 15, but was on section 2, two miles away from the land which they sold. The appellants took the appellee to the spring which was upon section 2, and, according to the findings of the court below, knowingly, falsely and fraudulently announced to him that the spring was upon the land which they proposed to convey for the $3,000. Not a single circumstance appears from the testimony which would be calculated to put the appellee upon notice of the falsity of this representation. He had no reason, therefore, to doubt the truth of the statement. All that he was bound to know was that he was buying 160 acres of land according to a certain description by legal subdivisions. These figures, abstract of title, and deed gave him no clue whatever as to where the land actually was upon the face of the earth. The appellee was, by no circumstance attending the negotiations, called upon to investigate the boundaries of the tract of land which he was purchasing; and, even if his suspicions had been aroused by any circumstance, the only way he could have located the land upon the surface of the earth would have been to have employed a surveyor to locate the boundaries. The parties, therefore, were not upon an equal footing, and they did not have the same means of knowledge, readily accessible, and under such circumstances it is clear, upon principle and from the authorities, that the appellee was entitled to rely upon the representation.

The most satisfactory discussion of this branch of the law with which we are familiar is to be found in Pomeroy's Equity Jurisprudence (3d Ed.). In

volume 2, section 891, of that work, the eminent author says:

"The foregoing requisite, that the representation must be relied upon, plainly included the supposition that the party is justified, under all the circumstances, in thus relying upon it. This branch of the rule presents by far the greatest practical difficulties in the decision of cases, because, although the rule is well settled, and is most clearly just, its application must depend upon the facts of each particular case, and upon evidence which is often obscure and conflicting. In determining the effect of a reliance upon representations, it is most important to ascertain, in the first place, whether the statement was such that the party was justified in relying upon it, or was such, on the other hand, that he was bound to inquire and examine into its correctness himself. In respect to this alternative, there is a broad distinction between statements of fact which really form a part of, or are essentially connected with, the substance of the transaction, and representations which are mere expressions of opinion, hope or expectation, or are mere general commendations. It may be laid down as a general proposition that, where the statements are of the first kind, and especially where they are concerning matters which from their nature or situation may be assumed to be within the knowledge or under the power of the party making the representation, the party to whom it is made has a right to rely on them, he is justified in relying on them, and, in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon the truth of the statements, he is not bound to make inquiries and examination for himself. It does not, under such circumstances, lie in the mouth of the person asserting the fact to object or complain because the other took him at his word; if he claims that the other party was not misled, he is bound to show clearly that such party did know the real facts; the burden is on him of removing the presumption that such party relied and acted upon his statements."

Circumstances, however, may be present which will deprive a person to whom representations have been made of the right to rely upon them, and the same author, in section 892, arranges those sets of circumstances under four heads, as follows:

"(1) When, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statements; (2) when, having the opportunity of making such examination, he is

charged with the knowledge which he necessarily would have obtained if he had prosecuted it with diligence; (3) when the representation is concerning generalities equally within the knowledge, or the means of acquiring knowledge, possessed by both parties; (4) but when the representation is concerning facts of which the party making it has, or is supposed to have, knowledge, and the other party has no such advantage, and the circumstances are not those described in the first or second case, then it will be presumed that he relied on the statements; he is justified in doing so."

The author further amplifies the doctrine in section 893 by showing that necessarily a person who has received a false representation, but who in fact institutes an independent inquiry and learns the true facts, would not be in a position to claim that he had been defrauded, simply because the other party had made the fraudulent representation. He further points out that the same result would follow when, after representation, the party receiving it has given to him a sufficient opportunity of examining into the facts, and when his attention is directed to the sources of information, and he commences, or purports to commence, an investigation. In such case he would be charged with the knowledge of all the facts which he might have obtained had he pursued the inquiry to the end with diligence and completeness. The same author, in section 895, further amplifies the principles governing these matters, and points out that a further qualifying rule controls all of the principles heretofore stated, and is to the effect that, where a representation is made of facts which are, or may be, assumed to be within the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The mere existence of opportunities for examination, or of sources of information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice to

the party would be inferred.  The doctrine of constructive notice does not apply where there has been such representation.  The author says:

"If one party—a vendor, for example—claims that the invalidating effects of his representations are obviated, and that the purchaser was not misled by them, either because they were concerning patent defects in the subject-matter, or because he was from the outset acquainted with the real facts, or because he made inquiry, and had thereby ascertained the truth, the foregoing qualification plainly applies; it is plainly incumbent on the vendor to prove the alleged knowledge of the purchaser by clear and positive evidence, and not to leave it a matter of mere inference or implication; an opportunity or means of obtaining knowledge is not enough."

The principles above set out have often been specifically applied to cases like the present one.  Thus in Smith on Law of Frauds, § 164, it is stated:

"In an action to rescind, where it appears that the defendant pointed out to plaintiff certain land which constituted a part of the subject-matter of an exchange which was not in fact the actual land conveyed, it is sufficient ground for rescission.  A purchaser is not required to have land surveyed to ascertain the location where representations have been made to him."

In 20 Cyc. 32, it is said:

"It is a general principle, however, that if no confidential relations exist between the parties, and if the facts represented or concealed are not peculiarly within the knowledge of the party charged, and the other party has available means of knowing the truth by the exercise of ordinary prudence and intelligence, and nothing is stated or done to prevent inquiry by him, he must make use of his means of knowledge, or he cannot complain that he was misled. * * * On the other hand, if the fact represented is one which is susceptible of accurate knowledge, and the speaker is or may well be presumed to be cognizant thereof while the other party is ignorant, and the statement is a positive assertion containing nothing so improbable or unreasonable as to put the other party upon further inquiry or give him cause to suspect that it is false, and an investigation would be necessary for him to discover the truth, the statement may be relied upon."

The author of the article in Cyc. applies this general statement to specific matters, on page 55 as follows:

"As a general rule, if a vendor of property, in order to induce a sale, makes positive assertions as to any material fact which is peculiarly within his own knowledge and of which the purchaser is ignorant, such as title, area, boundaries, location, rents, profits, or income, or incumbrances, [they] may be relied on by the purchaser without further investigation; and, if the statements are false and fraudulent and cause damage to the purchaser, he may hold the vendor liable in damages."

The authors collect numerous cases supporting the texts, some of which will be examined.

In Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638, the plaintiff was unacquainted with the location of property in the vicinity of St. Paul. The defendant professed to take him out upon the ground, and point out the property which he proposed to trade to the plaintiff, but in fact he fraudulently pointed out other property, differently located. The defendant argued that the representation was not relied upon because the plaintiff, when he made the selection from the plats, knew exactly what property he was getting. The court pointed out that an inspection of the plat would not inform the plaintiff as to the actual location of the lots on the ground. It was argued that the plaintiff was guilty of negligence in not availing himself of the means at hand and examining its true location, and for that reason he was not entitled to relief. The court said:

"As between the original parties, one who has intentionally deceived the other to his prejudice should not be heard to say, in defense, that the other party ought not to have trusted him."

The court rescinded the contract.

In Roberts v. French, 153 Mass. 60, 26 N. E. 416, 10 L. R. A. 656, 25 Am. St. Rep. 611, the misrepresentation was as to the length of the boundary lines of a certain lot of land. The court held that, not-

withstanding the vendee saw the land and saw the monuments marking the boundaries, he had a right to rely upon the representation that the lines had been actually measured by the person making the representation, and that they were of a certain length.

In McGibbons v. Wilder, 78 Iowa 531, 43 N. W. 520, a false representation was made as to the location of a certain block in the city of Sioux City, Iowa. It appeared that nothing less than the employment of a competent surveyor to go upon the ground, and possibly the adjacent ground, with his instruments, would have enabled the plaintiff to ascertain the true corners of the land. The trial court submitted an inquiry to the jury in the nature of a request for a special finding as to whether the plaintiff, by the exercise of reasonable diligence, could have ascertained the truth with respect to the facts contained in the false representation. The Supreme Court of Iowa held that this was erroneous for the reason that a party may rely upon representations as to the ownership of property, its location, and the like, and that, to entitle him to recover for fraudulent representations, he is not bound to show that he instituted inquiry by consulting records or plats, or employing a surveyor or the like.

A case often cited is Slaughter's Administrator v. Gerson, 13 Wall. (U. S.) 379, 20 L. Ed. 627. In that case the false representation was that a certain steamboat drew not more than 3½ feet of water, while as a matter of fact she was grounded upon her first trip in 5 feet of water. It appeared that the plaintiff's intestate made a personal examination of the boat before purchasing, and took with him his own ship carpenters to examine the boat and ascertain how much water she drew. The court held that under these circumstances Slaughter could not rely upon false representation. This case is of no application to the case at bar because the facts are entirely different, and it well illustrates the principle,

hereinbefore pointed out, that where a vendee under-
takes to make a personal investigation he is charge-
able with all of the knowledge which would result
from a thorough examination, and cannot rely upon
false or fraudulent representations.

In McKinnon v. Vollmar, 75 Wis. 82, 43 N. W. 800,
17 Am. St. Rep. 178, the defendant showed the
plaintiff a piece of land, heavily timbered with pine
timber, as the land he was selling him, while as a
matter of fact the land described in the conveyance
was a different piece of land, about one mile distant.
The court held, for this reason, and a further fraud-
ulent representation as to the amount of timber on
the land, the contract might be rescinded and the
purchase price recovered.

In Kirkland v. Lott, 2 Scam. (Ill.) 13, 33 Am.
Dec. 435, the defendant resisted a suit upon a note
given for the purchase price of some lots in a cer-
tain town in Illinois, upon the ground that he had
been fraudulently shown a piece of ground by the
plaintiff which was not the ground which he, in fact,
bought, and that he relied upon the representation.
The court said:

"If the plaintiffs had made no representations as to the
location of the lots, the defendant would reasonably have
sought, and might have obtained, correct information from
some other source; and it is not for the plaintiffs to say that
it was his folly not to have done so, when their representa-
tions were the cause of his omission. Credulity on his part
is no excuse for fraud on theirs."

In Bradley v. Bosley, 1 Barb. Ch. (N. Y.) 125, a
fraudulent representation was made as to the loca-
tion of certain lots which were taken in exchange
for a farm. The court said:

"It is very evident, from the whole case, that the defend-
ant knew he was dealing with a man who was wholly unac-
quainted with the situation and quality of the land in the
Illinois lot; and who relied upon the representation of those
facts to enable him to form a proper estimate of what he
could afford to allow for that lot, in part payment of the
price he had fixed upon the Le Roy farm. * * * It is true a

purchaser has no right to rely upon the price which a vendor asks for property, or even upon his statement of what it is worth, as evidence of its real value, but must form his own estimate of the value of the property, after ascertaining the facts upon which its value depends. Still, if the vendor, knowing that the purchaser is unacquainted with the land, makes a false representation as to any matter which, if true, would materially enhance the value of the property, he is in equity bound to make good his representation."

In Carmichael v. Vandebur, 50 Iowa, 651, the vendor, through his agent, pointed out to the vendee certain improvements as being upon the land covered by a certain certificate of sheriff's sale, which was false and fraudulent. The court said:

"If the jury found that the defendants' agent, White, took Carmichael upon the land, and as an inducement to him to purchase pointed out these improvements, and that the defendants, with knowledge of the fact, assigned the certificate knowing, as they claim they did, that it did not cover the homestead and improvements, they are in no position to urge that Carmichael should have made further inquiry."

In Gunther v. Ullrich, 82 Wis. 222, 52 N. W. 88, 33 Am. St. Rep. 32, the defendant made false representation that certain lots which he was exchanging with the plaintiff for a stock of goods were within the city limits of Milwaukee. The vendor did not resort to any artifice to prevent or dissuade the plaintiff from making inquiries as to the true location of the lots, and the plaintiff had present means of information as to their location prior to the date of making the exchange. The court said:

"It is too well-settled in this state to require discussion that where the proposed purchaser is ignorant of the location he has the right to rely upon a positive statement made by the vendor in that respect, and hold him responsible if it proves untrue, although there was no intentional misrepresentation."

In Cottrill v. Krum, 100 Mo. 397, 13 S. W. 753, 18 Am. St. Rep. 549, the action was for damages for false representations made in the exchange of shares of stock in a corporation for a certain lot of ground

in the city of St. Louis. This was an action by the vendor for damages for false representations as to the value of the stock and is not applicable to the facts in this case, except in its discussion of general principles governing some phases of this subject. Appended to this case is an extensive note where many authorities are collected.

The cases relied upon by counsel for appellants are inapplicable to the facts in this case. He cites Long v. Warren, 68 N. Y. 426. That was an action at law to recover damages for false representations and deceit in the sale of a farm by the defendant to the plaintiff. The representations were as to the non-existence on the farm of a noxious weed or grass known as quack grass. It appears, however, in that case, that the plaintiff and defendant in company visited the farm and looked it over, and the court concluded from the evidence in the record that the defendant did make a false representation as to the size of the piece of land which was covered by this quack grass, and that the plaintiff relied upon the statement, and was thereby induced to purchase the farm. The defendant did not attempt, by artifice or otherwise, to dissuade or hinder the plaintiff from making an inspection of the farm. He had twice passed across the farm in company with his companion, Kinney. In view of those facts and others which the court points out as to the ease with which this noxious grass could be discovered by any person looking for it, it said:

"Now the rule of law in such case was early thus laid down. Where the matter is not peculiarly within the knowledge of the defendant, and the plaintiff has the means of obtaining correct information, apart from the statements made to him, he may not recover upon the false declaration. * * * The representations must be such that the vendee has no means of discovering their falsity. If he does not avail himself of the means of knowledge within his reach, he will not be entitled to the aid of a court of equity."

The court held that the plaintiff, under the circumstances, could not recover.

In Board of Commissioners' v. Younger, 29 Cal. 172, the facts were very peculiar. The board of commissioners had made a rule that they would convey certain lands under their jurisdiction to actual occupants only, and at a price of $1.25 per acre. The defendant filed an application describing a piece of land by metes and bounds, and courses and distances, and concluding the description with the words, "containing about 72 acres of land." The deed was executed by the commissioners, and the defendant, upon being informed that the purchase price was $90, paid the same and received his deed. He made no representations and was asked no questions at the time of the conclusion of the transaction. The court held that this was a case where the application of the doctrine that, where each party to a transaction has an equal opportunity to know the facts, the person is not entitled to rely upon any representation made by the other party. In that case, however, it appears that the board of commissioners had maps and plats in their office from which they could tell at a glance that the conveyance contained much more land than they received the purchase price for, and that they had as much, or more, information as the defendant.

In Messer v. Smyth, 59 N. H. 41, a defendant resisted the foreclosure of a mortgage upon the ground that the plaintiff had made false representations as to the productiveness of the farm and its capacity to produce crops at the time he sold it to the defendant. The trial resulted in a verdict for the defendant. The judgment of the court below was upheld in the supreme court of New Hampshire, upon the theory that the representations made by the plaintiff related to the quantity of hay which had been cut on the farm, and the quantity and quality of apples that he had raised, the amount of pasturage he had had therefrom, the expense of carrying it on, and the income of it. These were all representations of fact peculiarly within the knowledge of the person

making them, and it was held that the representations were such that they might, under the circumstances, be relied upon. This case is against rather than for the position taken by counsel for appellants.

Counsel for appellants also cite Slaughter's Adm'r v. Gerson, 13 Wall. (U. S.) 379, 20 L. Ed. 627, which we have heretofore pointed out as inapplicable to a case of this kind, the facts in that case being that an independent investigation was made by the purchaser of the steamboat.

In Champion v. Woods, 79 Cal. 17, 21 Pac. 534, 12 Am. St. Rep. 126, a misrepresentation of a matter of law had been made to a wife by her husband, to the effect that all of his property was his sole property, and that none of it was community property. Relying upon that representation, she brought a suit for divorce against her husband, in which she omitted to make any claim for her interest in the community property. After discovering that the representations of her husband was false, she brought an action for a division of the community property against her late husband's executor. The court very properly held that this was a false representation of law, upon which she had no right to rely when she had finally come to the point of bringing an action for divorce against him.

In Saunders v. Hatterman, 24 N. C. 32, 37 Am. Dec. 404, the defendant sold to the plaintiff a tract of land lying in a neighboring county, which the plaintiff had never seen. At the time of the sale defendant stated that the land was worth about $3 per acre, and that it had sold for $500 or $600, and that it was good land. It was alleged by the plaintiff that the representations were false, and known to be false by the defendant when he made them. The court said:

"The true rule is stated to be that the seller is liable to an action of deceit, if he misrepresent the quality of the thing sold, in some particulars in which the buyer has not equal means of knowledge with himself; or if he do so in such a

manner as to induce the buyer to forbear making the inquiries, which for his own security and advantage he would otherwise have made. 2 Kent's Com. 487. The misrepresentation must be of a kind, the falsehood of which was not readily open to the other party."

The court held that there was no right of action under the circumstances, upon the theory that the mere expression of opinion that the land was worth a certain sum of money is a representation upon which a vendee is not entitled to rely.

In Lawson v. Vernon, 38 Wash. 422, 80 Pac. 559, 107 Am. St. Rep. 880, there was an action for damages for a false representation as to the location of certain town lots in a certain town in Washington. It appears that an agent of the vendor pointed out the supposed lots, and they were not the lots conveyed to the plaintiffs. The plaintiffs went into the possession of the lots shown them, and made improvements thereon. It was held that it was immaterial whether the representation was fraudulent or not, if in fact it was false, and that the plaintiffs were entitled to judgment for damages for the improvements.

In Mamlock v. Fairbanks, 46 Wis. 415, 1 N. W. 167, 32 Am. Rep. 716, an action was brought to set aside a contract by which the plaintiff purchased of the defendant a certain note and mortgage, on the ground of false and fraudulent representations made to the agent of the plaintiff at the time of the purchase, as to the adequacy of the mortgage and security, and as to the responsibility, identity, and residence of the parties who executed the mortgage. The court correctly held that the plaintiffs, having means in their own hands and neglecting to protect themselves, could not recover. It is to be seen that this case has no application to a case like the present one.

In Silver v. Frazier, 3 Allen, 382, 81 Am. Dec. 662, an adjoining owner induced an agent of the plaintiff to believe that the property line between

the two owners would encroach upon a certain cellar which he had had dug and over which he was about to erect a residence; that the agent, in the owner's absence, was induced to move the site of the building to a more convenient and far less desirable part of plaintiff's land. The court held that there was no cause of action. It is pronounced by the court as being without precedent, and the judgment of the court was put upon the ground that the voluntary misrepresentation by the stranger to title was not the proximate cause of the injury to the plaintiff.

In Brown v. Bledsoe, 1 Idaho 746, the plaintiff bought a mine, and claimed that certain false representations were made to him about the mine before he bought the same. What those representations were does not appear from the report of the case, and the plaintiff went on and made large expenditures upon the mine after the representations had been made. Under those circumstances the court held that he had no cause of action.

In Crocker v. Manley, 164 Ill. 282, 45 N. E. 577, 56 Am. St. Rep. 196, a suit was brought to set aside a conveyance of land made in exchange for stock of a mining company, on the ground of fraudulent representations. It was held that the action could not be maintained, for the reason that the plaintiff himself visited the mine and examined the same, and was in no way deceived as to the property or the quality of its ores, and had as much information in regard to the mine as the other party, and therefore did not rely upon the representations as to its value.

In Harwell v. Martin, 115 Ga. 156, 41 S. E. 686, a sale of standing timber was made for $8,000. One of the tracts, instead of containing 1,200 acres, as specified, contained only 358.7 according to actual survey. The plaintiff was taken upon the ground and shown the timber, and was informed that the whole 1,200 acres was of the same general quality. He made no investigation as to the area of the tract, but relied upon the representation of the

vendor. The court held that the plaintiff, under these circumstances, had no cause of action. This case goes further in support of appellants' contention than any we have seen, but we do not deem it in accord with the trend of authority. It may be that this holding in this case is justifiable upon the ground upon which it seems to be placed, viz. that representations as to quality may ordinarily not be relied upon by the vendee, where he has an opportunity to examine the land. But the facts in the case show that there was a false representation as to the quantity, and in this particular the case seems to be out of line with authority unless, indeed, it was a case where the disparity between the area, falsely represented at 1,200 acres, was so great from the actual area (358.7) as to amount to actual notice of the false character of the representation.

In Washington Central Imp. Co. v. Newlands, 11 Wash. 212, 39 Pac. 366, a vendor made representations that he had contracted for the building of a $9,000 hotel, on lots within 60 feet of the lots which he sold to the vendee. There was nothing in the facts pleaded to show that there was no opportunity to view the premises, or that such a view would not disclose the falsity of the representation. The allegation was that the representation was made that the hotel was already in the process of erection, and there was no excuse for the vendee not to verify such representation.

It is clear that, under the circumstances shown by the record in this case, the vendee was authorized and entitled to rely upon the representation that the spring was upon the land that he bought, and to rescind the contract upon ascertaining the falsity of the representation. He could not investigate the truth of the representation without employing a surveyor, as he did after he made the purchase, and there were no suspicious circumstances present which would put an ordinarily prudent man upon

inquiry. Upon both reason and authority, the vendor should not be heard to say that the vendee ought not to have relied upon the representation. It is, of course, to be noted in this connection that the appellants deny they made the representations, and they both averred and testified that they not only did not make the representations, but that they flatly informed the vendee that the spring was not upon the land. The court, however, found the facts otherwise, and the case is to be viewed upon the theory that the representations were made.

It follows from all of the foregoing that there is no error in the record, and that the judgment should be affirmed; and it is so ordered.

ROBERTS and RAYNOLDS, JJ., concur.