215 P.2d 1013

**BENNETT v. FINLEY.**

No. 5239.

Supreme Court of New Mexico.

March 14, 1950.

J. D. Weir, Las Cruces, for appellant.

W. C. Whatley, Las Cruces, W. B. Darden, Las Cruces, LaFel E. Oman, Las Cruces, for appellee.

. SADLER, Justice.

The plaintiff, appearing as the appellant here, through an agent and in writing, contracted the sale to defendant of an irrigated farm of approximately 111 acres located in the lower Rio Grande Valley in Dona Ana County. The terms of sale were negotiated on behalf of plaintiff by his real estate agent. The agreed purchase price was $60,000, of which $17,500 was to be paid in cash, including a $5,000 earnest money check, and the balance was payable in 8 annual installments, each in the sum of $7,600, to be represented by notes bearing interest at the rate of 6 per cent. per annum.

The written contract in the form of a receipt for the earnest money check contained the terms of sale and described the land as "111 acres of land located ½ mile SW of Las Cruces and belonging to Donald Bennett together with all improvements thereon." Upon the signing of the contract, the earnest money check in the sum of $5,000 was delivered by defendant to the agent, payable to the order of his agency. Prior to the signing of the contract, the agent took defendant and his wife's father and her brother, all experienced irrigation farmers, on a trip to the farm. It was represented to the defendant by the agent that the farm contained one hundred fourteen acres of which 3 acres were to be reserved; that of the remainder only 10 to 11 acres, constituting poor farming land, lay in the river bed and that there were approximately 100 acres of good farming land located on the upper bench of the valley. The trip to the farm was more or less casual. While entering the farm they drove by the house occupied by the owner and on beyond approximately a quarter

of a mile, at which point they stopped upon discovering that an automobile had recently become stalled in the sand there.

It was from this location, near the center of the farm, that such inspection as was made took place. The defendant had never visited the farm prior to this occasion; nor had his father-in-law or brother-in-law, done so. The agent answered an inquiry as to where the east line of the river bed lay and, while so viewing the premises, represented to defendant that there were from 10 to 11 acres of river bed land, at the same time undertaking to point out where the boundary line was in relation to the river bed. None of the group, so far as the evidence discloses, left the vicinity of the car which had brought them. No measurements of any kind were taken and upon departing they returned over the same route traveled when entering the farm. On the way into the farm, the agent had paused momentarily at the owner's residence to introduce the defendant and his companion to him.

The farm, originally, was listed with the real estate agent for sale, with improvements and farm equipment, at a price of $75,000. The agent later suggesting that an offer of $60,000 be made for the farm with improvements only, shortly after the visit to the farm, such an offer was made. Thereupon a contract in the form of the written receipt mentioned was signed by both parties and the earnest money check was executed and delivered to the agent as already stated. On the same day this was done the defendant, taking his wife with him, again visited the farm and there talked with the owner. They discussed the acreage and, for the first time, the defendant learned there were approximately only 83 acres on the upper bench of the valley. This was the only land in the purchase that would classify as "good farming land," the reminder being "river bed land," inferior to the other for farming purposes. Upon learning this fact, the defendant went immediately to the agent in an effort to rescind the contract and demanded the return of his $5,000 earnest money check. The agent informed him the request could not be complied with, whereupon the defendant promptly stopped payment on the check.

The statement as to the number of acres in the river bed was simply another way of representing the number of acres of good farming land remaining on the upper bench of the valley. Obviously, it was a material representation, affording a decisive consideration bearing on the price defendant might be willing to pay for the farm. He relied upon its truth and accuracy. This action against defendant on the check followed and upon facts found by the court, as related above,

it rendered judgment dismissing the complaint. It is for the revision and correction of the judgment so rendered that this appeal is prosecuted.

The errors assigned are argued under three points any one of which is decisive, if well taken. First, it is said the trial court erred in admitting parol testimony to vary or contradict the terms of the written agreement. The respect in which it is said the writing is varied by proof of the representation as to number of acres of good farming land contained in the farm is best expressed by counsel for plaintiff, himself, in this excerpt from his brief, to wit: "The subject matter of the negotiations carried on by appellant and appellee was the Donald Bennett farm, containing 111 acres, together with all improvements, and was so described in the written contract executed by both parties. To admit parol testimony that the upper bench contained 100 acres of good or first class farming land and that appellee's purchase thereof was conditioned thereon clearly adds to the terms of the written instrument and is error."

The representation was material in its bearing on defendant's willingness to contract. If untrue, whether made innocently or with fraudulent intent, it was actionable, when relied upon by defendant, as the trial court found it was. Wilson v. Robinson, 21 N.M. 422, 155 P. 732, Ann.

Cas.1918C, 49; Bell v. Kyle, 27 N.M. 9, 192 P. 512; Thrams v. Block, 43 N.M. 117, 86 P.2d 938. Testimony as to making of the representation, under the facts presented by the record before us, falls within an exception to the parol evidence rule and the trial court did not err in admitting it. Locke v. Murdoch, 20 N.M. 522, 151 P. 298, L.R.A.1917B, 267; Turner v. Denton, 42 N.M. 630, 83 P.2d 459; Alford v. Rowell, 44 N.M. 392, 103 P.2d 119.

The next point argued is counsel's challenge to sufficiency of the evidence to support the trial court's finding that the agent actually made the representation claimed as to acreage of good farming land. As heretofore stated, it was defendant's claim there was a representation by the plaintiff through his agent that the farm being purchased contained approximately 100 acres of good farming land. The land located in the river bed was of an inferior quality for farming purposes, appearing to be seepage land growing up in salt grass, whereas the acreage located on the upper bench of the valley constituted the best farming land. The agent admitted stating to the defendant that the farm had about 100 acres with water right. However, when asked if he had said to him there were 10 to 11 acres in the river bed, he replied that he could not remember. He admitted he might have so

stated, being uncertain about the amount of acreage there, himself. The defendant and two other witnesses testified positively that the agent did so state and the court so found. If there were only 10 to 11 acres in the river bed, then the area of good farming land on the mesa or upper bench of the valley was reduced by 18 to 20 acres. Accordingly, the per acre price defendant was to pay for the good farming land would be substantially increased. We are unable to say there was not substantial evidence to support the trial court's finding in this particular.

A reading of the testimony fails to disclose any such personal investigation or inspection by defendant as would deny him the right to rely on the agent's representation. The time spent on the premises did not exceed a period variously estimated as from thirty minutes to an hour. Although defendant alighted from the car at the point where it was stopped, he did not leave its general vicinity. No measurements of any kind were taken. True enough, in answer to an inquiry by some member of the party the agent attempted to point out the east line of the river bed.

But the defendant made no tour of the farm. None of his party had ever visited it theretofore and there was neither time nor opportunity on the occasion in question for such an inspection as to warrant a finding that defendant had abandoned reliance on the agent's representation as to acreage to form an independent judgment based on personal inspection. Bell v. Kyle, 27 N.M. 9, 192 P. 512. There was here no such inspection, nor opportunity therefor, as our decisions in Berrendo Irrigated Farms Co. v. Jacobs, 23 N.M. 290, 168 P. 483; Bell v. Lammon, 51 N.M. 113, 179 P.2d 757, and Johnson v. Bonnell, 52 N.M. 123, 192 P.2d 836, cases relied upon by the plaintiff, either indicate or hold will take away the right to rely on a claimed misrepresentation.

Finding no error, the judgment of the district court will be affirmed.

It is so ordered.

BRICE, C. J., and LUJAN and COMPTON, JJ., concur.

McGHEE, J., having tried the case below, did not participate.