258 P.2d 1131

**JONES et al. v. FRIEDMAN.**

No. 5598.

Supreme Court of New Mexico.

June 30, 1953.

Lewis R. Sutin, Albuquerque, for appellant.

Thomas N. Keltner, Albuquerque, for appellees.

McGHEE, Justice.

The defendant appeals from a judgment in favor of the plaintiffs for the balance due under a written contract for the purchase by defendant of an automobile salvage business known as the J. & B. Salvage Co. and located in Albuquerque, New Mexico. In defense to the action it was alleged the plaintiffs fraudulently represented the business held good and current accounts receivable for $2,000 and by counterclaim the defendant sought rescission of the contract, or, in the alternative, damages of $2,000.

It is urged on this appeal by defendant that the lower court erred in holding the defendant had no right to rely upon the representations of the plaintiffs because he failed to make a complete investigation of the accounts receivable before entering the contract, and that the findings made by the lower court did not sustain the conclusion

of law dismissing the defendant's counter-claim.

The testimony of the parties regarding the transaction of sale may be summarized as follows:

The defendant testified a former employee of the plaintiffs, Mike Naccaratto, approached him for a loan of $4,000 with which to buy the salvage business owned by the plaintiffs. In the defendant's words, he "sort of calmed him (Naccaratto) down and asked him what the deal was." Naccaratto described the auto wrecking yard and stated he had formerly worked there and "the best part of the deal was that there were $2,000 in accounts receivable." Thereafter the defendant went to look over the business with a view to buying it for himself and during the course of negotiations inquired of the plaintiff Jones about the accounts receivable; that Jones told him the sum of approximately $1,200 was due the company for used cars sold on terms and that the business had certain parts out on consignment of the value of $800; that the defendant further inquired if the accounts were good and was told by Jones the accounts were "as good as gold, that they (the debtors) were working people, and that there wasn't a thing to worry about."

The plaintiff Jones testified he told the defendant there were approximately $1,200 in contracts on cars sold which were being paid off in payments and also told him there were parts out on consignment valued at approximately $200. He further testified if he told the defendant the accounts were as good as gold it was because at that time he felt they were, but that if he made such statement he qualified it by a statement that any account is only as good as the collector is.

There was considerable testimony respecting an investigation entered upon by the defendant prior to making the contract. The records of the accounts receivable were kept in an informal fashion. When a car was sold on terms the plaintiffs prepared an instrument called "Explanation of Deal" on which was entered the name and address of the purchaser, the year and make of car purchased and the terms of sale. The plaintiffs did not take chattel mortgages on the cars, or ordinary conditional sales contracts, but for security retained the titles to the cars sold. These titles together with the "Explanations of Deals" were kept in manila envelopes with the record of payments made being endorsed on the outside of the envelopes. It is undisputed that before the contract was entered into the defendant examined these instruments with the plaintiffs, although the examination was cursory and hurried, as it was made on Thanksgiving day and the defendant was anxious to return home.

The contract was entered into on the 23rd day of November, 1951, under the

terms of which the defendant paid $1,000 down and was to pay the balance of $3,000 in 30 days. When the plaintiffs in due time asked for the payment of the balance the defendant asked for more time and paid $300 to the plaintiffs which the defendant described at the trial as "good faith money." Thereafter on January 10, 1952, the defendant decided the $2,000 in accounts receivable had been misrepresented to him and he tendered the business back to plaintiffs. This action followed.

The defendant testified he had received nothing for parts on consignment, and had received a total of $220 on other accounts receivable.

The plaintiffs and defendant requested direct findings in their respective favor on the disputed issue of whether or not false representations had been made. The court entered its own findings, the first of which found the contract of sale had been entered into by the parties, and the second and third findings are as follows:

"II. That no false representations were made to the Defendant by the Plaintiffs for the purpose of inducing him to enter into said contract without making a proper investigation. In fact, the Defendant was in a position and had an opportunity to make a full investigation of the matter before he entered into said contract.

"III. That defendant was not entitled to rescind the contract merely because the deal proved to be an unsatisfactory one for him after he entered into the contract."

The court thereupon concluded the plaintiffs were entitled to judgment and that the evidence did not support the counterclaim of the defendant and dismissed such counterclaim.

It is the position of the defendant the court has made no finding as to whether false representations were made, but has only found he did not have a right to rely on representations which he had full opportunity to investigate, and he challenges the correctness of this ruling and the dismissal of his counterclaim. The plaintiffs, on the other hand, contend the lower court has found no false representations were made.

It is our duty to give liberal construction to the findings of fact made by the lower court in order to sustain the judgment entered thereon. Heisel v. York, 1942, 46 N.M. 210, 125 P.2d 717; Mathews v. New Mexico Light & Power Co., 1942, 46 N.M. 118, 122 P.2d 410; Greenfield v. Bruskas, 1937, 41 N.M. 346, 68 P.2d 921. However, in view of the language used in finding of fact No. II, the most liberal construction we can place upon it is that it is silent on the question of whether or not false representations were made and its

import goes solely to the question of the motive or purpose of the plaintiffs with regard to the alleged misrepresentations, and the ability and opportunity of the defendant to investigate for himself.

Before proceeding to a determination of the case it is necessary to distinguish between the alleged false representation as to the collectibility of the accounts receivable arising from the sales of used cars, and that respecting the amount due for parts out on consignment.

As to the first of these, while we grant that a false representation as to the collectibility of accounts may, under proper circumstances, be made the basis for rescission of contract, as any other misrepresentation of a material fact justifiably relied on by the party seeking relief, yet, before the falsity of the representation can be established, it must be shown the accounts are either legally uncollectible, or, if legally collectible, that they are in fact uncollectible after the exercise of due diligence to so collect them on the part of the one asserting the falsity of the representation.

The record discloses the defendant had for some time been the proprietor of the Duke City Iron & Steel Company, a business whose enterprises paralelled in. large part those of the J. & B. Salvage Co. The record does not show the age of the defendant or how long he had been engaged in such business, but when asked if he were over twenty-one years old, he responded, "A little older," and the answer was apparently intended to be facetious. By his testimony he is shown to be most conversant with the type of business in which the plaintiffs had been engaged. He testified as follows regarding his efforts to collect the sums due him on the accounts receivable:

"* * * I made a proposition with Mike Naccaratto to manage the place for me on the basis of $50.00 a week. After I got a certain amount of the original investment back, he automatically became a partner. I left him in charge of the place. As the weeks went by, he came down for pay for him and helper, and then we had to cut some cars, and he didn't know how to cut very well. I hired his father for three weeks at $40.00 a week to cut cars. I couldn't see any money coming in; there was just outlay. I asked about the payments these boys were supposed to make. He didn't know. I sent him out to see what he could do. He spent a whole day trying to contact some of the people. He came back with the story that he couldn't find them, and he didn't know what to do. I told him to go ahead and write letters to all of them. Two of them did come back. There was one burnt car that

was towed in all burnt. The fellow wouldn't pay on a burned car. Another fellow broke the engine on a car and didn't want to pay, so he brought the car back."

When asked if he had tried to recover the cars, the defendant testified:.

"I sent Mike (Naccaratto) out, and he came back and said he couldn't do anything about them, and like I mentioned we sent out letters. That was all."

The efforts taken by the defendant to collect the accounts were at the most superficial and seem to us to be completely negligent, with the result the defendant has failed to establish the falsity of the representation the accounts were good, even if such representation was made. It would be ridiculous to say that any one familiar with the type of accounts involved, on sales of cars 10 to 14 years old on monthly payments running from $10 to $25, could establish the falsity of a representation they were good by merely holding the accounts and placidly awaiting the arrival of the debtors with money in hand, and the defendant has done very little more than that here.

The defendant relies upon the case of Totten v. Burhans, 1892, 91 Mich. 495, 51 N.W. 1119, 1120, to support his position. We are in agreement with the rule of that case, as above stated, that under certain circumstances a false representation respecting the collectibility of accounts may be made the basis for the allowance of rescission of a contract, even though the representation be innocently made. However, in the application of the rule the following language from that opinion is, we believe, most significant:

"* * * the evidence in the case should have been confined to the matter of these accounts, whether they were good and collectible, worth a hundred cents on the dollar at the time plaintiff purchased them, what amount of them were collected by the plaintiff, and whether or not the balance could have been collected by due diligence on the part of plaintiff. * * *"

The case of Crane v. Elder, 1892, 48 Kan. 259, 29 P. 151, 15 L.R.A. 795, also relied upon by defendant, is not applicable to the present case for there the notes in question were procured in the first instance by fraud and were not legally collectible.

Other cases relied upon by defendant are to be distinguished upon their facts from the present case.

Since the lower court would have to find in favor of the plaintiffs on this issue, the remanding of the case for further findings as to whether the plaintiffs falsely represented the collectibility of the accounts re-

ceivable for the used cars would be an empty formality. Accordingly this feature of defendant's appeal must be ruled against him.

The question presented by this appeal with respect to the alleged false representation about the amount owing the salvage company for parts placed on consignment raises a problem different from that treated in foregoing paragraphs. Here the misrepresentation, if made, was false when made, without proof of any other matters, as the plaintiffs do not contend the sum due was $800, but maintain the amount so due was approximately $200 and that they so advised the defendant during the negotiations above detailed.

■ The rule in New Mexico is that irrespective of the good faith with which a misrepresentation of material fact is made, if it is justifiably relied on by one seeking rescission of the contract, such rescission should be allowed. Bennett v. Finley, 1950, 54 N.M. 139, 215 P.2d 1013; Thrams v. Block, 1939, 43 N.M. 117, 86 P.2d 938; Wilson v. Robinson, 1916, 21 N.M. 422, 155 P. 732, Ann.Cas.1918C, 49.

No circumstance appears in the record placing the defendant under a duty to investigate what was actually due for the parts on consignment, if, in fact, any misrepresentation was made. In Bell v. Kyle,

1921, 27 N.M. 9, 192 P. 512, 514, this Court quoted the following matter from 2 Pomeroy's Equity Jurisprudence (3d Ed.) Sec. 891, with approval:

"* * * there is a broad distinction between statements of fact which really form a part of, or are essentially connected with, the substance of the transaction, and representations which are mere expressions of opinion, hope or expectation, or are mere general commendations. It may be laid down as a general proposition that, where the statements are of the first kind, and especially where they are concerning matters which from their nature or situation may be assumed to be within the knowledge or under the power of the party making the representation, the party to whom it is made has a right to rely on them, he is justified in relying on them, and, in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon the truth of the statements, he is not bound to make inquiries and examination for himself. * * *"

■ While it might be urged the defendant had no right to rely upon the alleged misrepresentation, in view of the fact there was no record of any contract or arrangement between the salvage company and

any other person or business for sales on a consignment basis in any of the records of accounts he did examine, yet, in view of the unusually informal business practices of the plaintiffs, we believe the defendant was justified in relying upon the misrepresentation, if made.

It thus follows that as to the matter of the account for parts placed on consignment the judgment of the lower court is not sustained by the findings entered. The matter having been fully litigated below, and the defendant having requested a finding in his favor on the point, as opposed to one offered by the plaintiffs, it was error for the lower court to refuse to find thereon. McGrail v. Fields, 1949, 53 N.M. 158, 203 P.2d 1000; Farmers' Development Co. v. Rayado Land & Irrigation Co., 1923, 28 N.M. 357, 213 P. 202. The case must accordingly be remanded for a further finding of fact upon the issue of whether or not the plaintiffs falsely represented to the defendant the sum of $800 was due the salvage company for parts to be sold on consignment, and for further proceedings consistent with this opinion and the finding to be made.

The defendant shall recover the costs of his appeal.

It is so ordered.

SADLER, C. J., and COMPTON, COORS and LUJAN, JJ., concur.