## LYONS v. CHICAGO, M. & ST. P. RY. CO.

In an action for injuries to plaintiff by the frightening of her team from the sounding of the whistle of defendant's engine while passing near a highway, whether the whistle was sounded in an unusual and unnecessary manner, and whether the continued sounding of the whistle by the engineer with knowledge communicated to him by the fireman that plaintiff's horses were frightened constituted negligence, was for the jury.

Where, in such case, the evidence was conflicting as to whether two private crossings which the train was approaching were points of danger rendering it necessary or prudent for the engineer to sound the whistle before entering the cut, whether the engineer in the exercise of due care was required to sound the whistle at that point was for the jury.

Where defendant's engineer approaching certain private cross-ings began sounding the whistle, and was informed by his fireman that plaintiff's team on an adjoining highway was frightened, and notwithstanding such notice continued to sound the whistle, when he could have proceeded several hundred feet with safety after the whistle had been first sounded before sounding it again for such crossings, he was negligent in not doing so.

Though a locomotive engineer and fireman are not required to keep a lookout for persons traveling on a highway in close proximity to the railroad, if the engineer sees that a team is frightened, it is his duty to cease whistling until the peril is passed, in the absence of apparent danger to his train.

In an action against a railroad company for injuries to plain-tiff caused by her team becoming frightened at defendant's locomo-tive as it passed near a highway, the court charged at defendant's request that unless the jury found from the evidence that the engi-neer knew of plaintiff's peril, and blew the whistle with intent to frighten the team and to injure or annoy her, or unless he blew the whistle heedlessly or recklessly with unnecessary or unusual noises knowing her peril, she could not recover. The court also charged that, if there was any negligence, it was by reason of using the whistle to such an extent as to cause the accident after defend-ant's servants knew of plaintiff's peril. **Held** that, the first part of the instruction being unsustained by the evidence, the instructions were not objectionable for inconsistency.

Evidence that the whistling of defendant's engine by which plaintiff's horses were frightened "was pretty near all kinds," and that the engineer gave a "long whistle and a few toots mixed in with it," was sufficient to justify a finding that the whistling was unusual.

Where no exeception was taken to the charge which in effect submitted to the jury the discretion of finding or not finding on a issue of fact, the court's refusal to direct the jury to find on such particular questions was not reviewable on appeal.

(Opinion filed October 12, 1910.)

Appeal from Circuit Court, Pennington County. Hon. Levi McGee, Judge.

Action by Elizabeth G. Lyons against the Chicago, Milwau-kee & St. Paul Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*J. D. Elliott* and *Charles W. Brown,* for appellant.

A railroad company is not liable for injuries caused by a team taking fright at the ordinary operation of a train upon its road, or for injuries resulting from noises necessarily incident to

the operation thereof.   Clinebell v. R. R. Co., 110 N. W. 347;
Hendricks v. R. R. Co., 93 N. W. 141; R. R. Co. v. Roberts, 91
N. W. 707; Fares v. Ry. Co., 77 Pac. 230; Walters v. Railway
Co., 80 N. W. 451; Dewey v. Railway Co., 75 N. W. 74; Cahoon
v. R. R. Co., 55 N. W. 900; Abbott v. Kalbus, 43 N. W. 367;
Lamb v. Old Colony R. R., 140 Mass. 79; R. R. Co. v. Burkhart,
34 Alt. 1010; Doster v. R. R. Co., 34 L. A. R. 481; Everett v.
R. R. Co., 111 N. W. 281.   A railway company is not required
to treat a private crossing as a public one, so far as to require
the use of statutory signals by approaching trains; but though
no statutory duty rests on a railway company to sound the whistle
of its locomotive on approaching a private crossing, it is neverthe-
less chargeable with the common law duty of exercising reason-
able care.   Hartman v. Railroad Co., 110 N. W. 10; Swift v.
Railroad Co., 123 N. Y. 645; Owens v. Railroad Co., 41 Fed. 187;
Schindler v. Railroad Co., 87 Mich. 400.   It is not the duty of
those on the engine to be on the lookout for travelers on the
highway who may be endangered by the noises or smoke of a
passing train.   Lamb v. Old Colony Railroad Co., supra; Fares
v. Railroad Co., supra.   Where all reasonable probabilities from
facts unquestionably established by the evidence are on one side
of a controversy, the testimony of an interested party to the con-
trary does not create a conflict of evidence requiring such con-
troversy to be submitted to and determined by a jury, or, if sub-
mitted, support their determination, if contrary to all such reason-
able probabilities.   Flaherty v. Harrison, 74 N. W. 360; Badger
v. Cotton Mills, 70 N. W. 687; Thompson v. P. P. Co., 33 N. W.
856; Payne v. Railway Co., 39 Iowa, 523.

   *Chauncy L. Wood* and *Harrison E. Brown,* for respondent.

   Where there is a conflict in the evidence, or where impartial
jurors may draw different conclusions therefrom, the case must
be submitted to the jury.   Roberts v. Ruh, 22 S. D. 13, 114 N. W.
1097.   It is actionable negligence when injury results, to sound
the whistle in an unusual manner and at points where it is not
necessary to sound the same, or at points or places where it is
proper that the whistle be sounded when the operators know or

should know, that injury will or is likely to result. Phelan v. Granite B. Paving Co., 91 S. W. 440; Texas & P. R. Co. v. Hamilton, 66 S. W. 797, 63 Ill. 151; Gulf C. & S. F. R. Co. v. Box, 17 S. W. 375; Bittle v. Camden & A. R. Co., 28 Atlantic, 305; Culp v. Atchison & N. R. Co., 17 Kan. 475; Indianapolis Union R. Co. v. Boettcher, 28 N. E. 551; Texas & N. O. R. Co. v. Syfan, 43 S. W. 551.

CORSON, J. This is an appeal by the defendant from a judgment entered in favor of the plaintiff, and from the order denying a new trial. The action was instituted by the plaintiff to recover damages for an injury alleged to have been sustained by her on October 19, 1907, while she was going westerly in a vehicle from her home in Rapid Valley to Rapid City upon the public highway parallel with the defendant's railroad, which at the point where the accident occurred was in close proximity thereto. Her team became frightened at the noise made by the whistling of an engine drawing a cattle train going east from Rapid City, and about five miles therefrom, in the forenoon of that day, alleged to have been caused by reason of the negligence of the defendant's servants and employees. The negligence alleged in the complaint is as follows: "And when said engine had come opposite to this plaintiff and her said team and vehicle, while she was driving and traveling on said highway, and at the place aforesaid, and opposite the said engine aforesaid, and within 100 feet therefrom, and in plain view of the agents, servants, and employees of defendant in charge of said engine and train, they seeing and knowing of the near proximity of this plaintiff, with her said companions and team, and knowing of the near proximity of said highway to said railroad, at said place, the agents, servants, and employees of defendant needlessly, carelessly, and with gross negligence and heedlessly caused the steam whistle of said engine to be suddenly and violently blown, with useless, unusual, startling, and terrifying noises and screeches, and continued the same until some distance beyond the plaintiff, thereby greatly frightening the said team of this plaintiff, so that her said team became unmanageable, and by a sudden spring to the northward

broke the tongue of said vehicle, and then, suddenly dashing for-ward, ran away, throwing this plaintiff suddenly and violently to the ground and thereby and by reason thereof plaintiff received great bodily injury, etc.   *   *   *"   The defendant for answer admits that it is a railway corporation, that it was running its train at the time and place mentioned, and that the highway men-tioned in the complaint was located as stated, but denies each and every other allegation of the complaint; and alleges that the defendant and its servants used due care and caution in and about the operation of the engine and train referred to in the complaint. at the time and place therein mentioned, and that said injury, if any was in fact received, was not caused by any negligence or. fault on the part of the defendant or its servants, but was caused by the negligence and want of ordinary care on the part of the plaintiff.

It is disclosed by the evidence that the place of the accident was on a public highway parallel to a cut on defendant's road, known as "stony cut," on the farm of one Lewis. About 35 rods west of the stony cut is a public highway known as the "Read crossing." About 30 rods easterly of the public crossing is a private crossing of one Lewis, and from that to the west end of the stony cut is a distance of 5 or 6 rods. The stony cut is about 20 rods long and about 9 feet 6 inches deep in the middle part, sloping both ways. At the east end of the stony cut was an uncompleted private crossing with gates through the right of way fences, and about 20 rods east of the east end of the cut was a private crossing known as the Keliher crossing, with gates through the right of way fences, and the defendant's railway was on an air line for a considerable distance before it reached the public crossing, through the cut and for a considerable distance after passing the private crossings. From the public highway to and beyond the private crossings the public road ran parallel with the railroad.

The train consisted of an engine, caboose, and ten cattle cars, and at the time of the accident the train was in the cut, and the caboose was on or near the Lewis private crossing.

It is further disclosed by the evidence that on the day specified the plaintiff, with her son, a lad about 15 years of age, and two other ladies, were traveling along this highway in a two-seated open carriage drawn by a span of horses, and that the son was driving; that when passing along the highway, just over the highest point in the ridge through which the cut was excavated, they saw the train approaching, heard the whistle for the public crossing, and the train, when nearly opposite the carriage in which the plaintiff was seated, again whistled and continued its whistling through the cut at which plaintiff's horses became frightened and caused one of them to jump and rear, resulting in the breaking of the tongue or pole of the carriage and throwing the plaintiff to the ground, causing her quite serious injuries.

It was undisputed that the horses were gentle, and that the lad driving, though young, was a competent and careful driver, and that the horses were frequently driven by the plaintiff herself as well as by the son, and were not ordinarily frightened by a locomotive engine and train of cars, and also that the fireman noticed that the team was frightened and called the attention of the engineer to the fact at that time. It is also undisputed that the engine and train was in proper condition and properly manned by a conductor, engineer, fireman, and two brakemen.

It is the contention of the plaintiff that there was no necessity for sounding or blowing the whistle at the time and place in question, and that the sounding or blowing of the whistle was done in a negligent and unusual manner. The appellant contends, however, that the sounding of the whistle in approaching the cut and within the same was proper, as the train was approaching private crossings easterly of the east end of the cut, and the approaches to which the engineer was unable to fully see until very close to the crossings, and hence these private crossings were places of danger, requiring the engineer to sound the whistle in order to protect the train and the passengers and freight therein, and also as a protection to persons or live stock crossing the track at the private crossings before mentioned. There was some conflict in the evidence as to the custom of sounding the whistle

at the point designated. The evidence of the plaintiff tended to prove that the whistle was sometimes sounded by engineers when passing over this portion of the road, and at other times not sounded, and that the sounding of the whistle at this time was in an unusual manner, and, on the part of the defendant, that the engineer in charge of this train always sounded the whistle when going over this portion of the road and that other engineers were accustomed, also, to do the same, and that the whistle was not sounded in an unusual manner.

At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendant moved for the direction of a verdict in favor of the defendant on the ground that the plaintiff had failed to show any negligence on the part of the defendant in the equipment or running of its train. This motion was denied. We are of the opinion that the court committed no error in denying the motion, as the issue as to whether or not the private crossings easterly of the cut were of such dangerous character as to require the sounding of the whistle, and as to whether or not the whistle, when sounded, was so done in an unusual and unnecessary manner as to constitute negligence on the part of the defendant, and also as to whether or not the knowledge of the fireman that the horses were frightened, communicated to the engineer, and not acted upon by him, constituted negligence on the part of the defendant, were proper questions for the jury, and could not properly be determined by the court.

It is insisted by the plaintiff that, while under the law of this state it was the duty of the engineer to blow the whistle or ring the bell at least eighty rods before crossing a public highway and continue the same to the crossing, no duty devolved upon the engineer by law to sound the whistle when approaching private crossings. The appellant insists, however, that, while the law does not require the engineer to sound the whistle on approaching private crossings, yet, in order to comply with the requirements of the common law, it was his duty to use due care and caution in running the train, and it is required that the whistle be sounded before reaching such crossings for the protection of the train,

passengers, and freight therein, and also the protection of persons and live stock that may be passing over said private crossings. The plaintiff testified that the whistle was blown when the train was just opposite her carriage, and that just before she was thrown from the carriage she noticed a person looking out of the cab window of the engine, and Mr. Ricks, the engineer of the defendant, testified: "The fireman spoke something about some team being scared at the time, but I did not see it."

The court, at the request of the defendant, gave its second instruction, which is as follows: "The court further instructs the jury that it is not the duty of the engineer or fireman in charge of an engine of a railroad company to be on the lookout for travelers on a highway who may be endangered by the noises or smoke of a passing train and in this case your verdict must be in favor of the defendant and against the plaintiff, unless you find from the evidence that the engineer of the engine in question knew of the peril in which the plaintiff was placed, and blew the whistle with intent to frighten the plaintiff's team, or to injure or annoy her, or blew the said whistle heedlessly or recklessly, with unnecessary and unusual noises, knowing her peril." The court also gave to the jury the fourth instruction requested by the defendant, which, after stating the law requiring that a bell or whistle shall be placed on a locomotive engine, and shall be rung or whistled at a distance of at least 80 rods from the place where the said railroad shall cross another road or street, and shall be kept ringing or whistling until it shall have crossed said road or street, concludes as follows: "And I further instruct you, in this connection, that, after the engine had crossed said public highway, it was the right and duty of the engineer to again sound the said whistle before entering the cut mentioned in the evidence, if you find from the evidence that the said cut and the two private crossings to the east thereof were points of danger, rendering it necessary or prudent for the engineer to sound the whistle before entering the said cut for the safety of said train and its occupants, or for the safety of persons that might be using said private crossing." The court of its own motion instructed the jury as

follows: "You are further instructed · * * * that if you believe
from the testimony in this case that beyond the cut where the
whistle is alleged to have commenced blowing there was a private
crossing, and that the view from the engine was obstructed by the
cut so that stock or persons approaching the private crossing could
not be seen, it was entirely proper, and in accordance with good
railroading, for the engineer to blow his whistle at this point, and,
if the accident occurred by reason of the team becoming fright-
ened and running away because of the blowing of the whistle in
the ordinary and usual manner, then the plaintiff cannot recover,
unless you further believe from the testimony that the person in
charge of the said engine saw and knew that the plaintiff's team
was becoming frightened at said whistling, and by the exercise of
ordinary care could have stopped the whistling in time to have
prevented the injury. That is the point in this case, gentlemen
of the jury, you have got to pass on. The mere whistling of the
engine at this point was not negligence on the part of the defend-
ant. If there was any negligence, it was by reason of the using
of the whistle to such an extent as to cause this accident after
they knew the peril the plaintiff was in." It will be observed that
by the fourth instruction requested by the defendant and given to
the jury by the court the defendant, in effect, concedes that the
jury had a right to determine whether or not the "said cut and
the two private crossings to the east thereof were points of danger
rendering it necessary or prudent for the engineer to sound the
whistle before entering the said cut." Upon this question there
was a conflict in the evidence, and, there being such conflict, it
was for the jury to determine therefrom whether or not the cut
and the two private crossings constituted such places of danger as
required the sounding of the whistle at the point where the same
was sounded about opposite the plaintiff as she passed the train
on the highway. Assuming that the jury, therefore, after a full
consideration of the evidence, were of the opinion that the cut and
the two private crossings easterly thereof were not such places
of danger as required the sounding of the whistle continuously, in
the cut, then clearly the defendant was guilty of negligence by its

agents and servants so continuously sounding the whistle in the cut after the engineer had notice of the plaintiff's peril. While it is true that the engineer testified on the part of the defendant that the cut and crossings to the easterly of the same were points of danger, this statement was not conclusive upon the plaintiff as all the facts relative to the location of these crossings were before the jury, and it was therefore their province to determine from such facts whether or not it was necessary for the engineer to continuously sound the whistle while passing through the cut and before reaching these private crossings, notwithstanding the positive statement of the engineer. But in the view we take of the case we are inclined to the opinion that the engineer was clearly guilty of negligence in failing to cease sounding the whistle after he was notified by the fireman that the team was frightened, as the evidence shows he could have proceeded a few hundred feet after the whistle had been sounded before again sounding the same, as it appears from the evidence that the private crossing, completed and in use, was several hundred feet easterly of the east end of the cut, and with safety to the train and safety to persons or live stock crossing the track at the private crossings, and under such circumstances we are of the opinion it was the duty of the engineer to have done so. While it is a well-established rule that the engineer and fireman are not required to keep a lookout for persons traveling upon a highway in close proximity to the railroad, yet, when the engineer sees that a team is frightened, it is his duty to cease the whistling until the peril is passed, in the absence of apparent danger to his train, and this seems to be the view sustained by the authorities.

In 33 Cyc. 1145, the law in regard to injuries to persons on highways is stated as follows: "Where the railroad is situated upon or along a public street or highway, the public has the right to use the street as well as the railroad company, and the rights of each therein must be exercised with due regard to the rights of the other. A person upon such a street or highway is not a trespasser or mere licensee; and it is the duty of the railroad company in such a case to exercise reasonable care and diligence,

\* \* \* and to otherwise exercise ordinary care and prudence to prevent injuring such a traveler. \* \* \* This duty on the part of the railroad company to prevent injuring persons on adjacent highways or premises ordinarily arises only after it has become aware of the person's presence and peril. \* \* \* A railroad company is not liable therefore for injuries caused by horses upon a street, highway, or other premises near a railroad track becoming frightened at the ordinary appearance and movements of a train or cars under prudent and careful management. But it is liable where the fright and consequent injury is caused by some negligent or unnecessary act or omission on the part of the company, as where it fails to use all reasonable means at hand, such as abating noise, or stopping engines, if practicable to do so, which a man of ordinary prudence would use to allay the fright of the animal after seeing it and knowing or having reason to believe that it would become frightened or unmanageable and cause the injury. \* \* \* " The learned author of the article cites a large number of cases from the different states in support of his propositions, among which is the late case of Alabama Great Southern R. Co. v. Fulton, 144 Ala. 332, 39 South. 282, from which we quote the following: "The plaintiff, of course, had a right to be where he was and as he was when he was injured in consequence of his mule becoming frightened by the defendant's train. \* \* \* Therefore defendant's trainmen were under no duty to keep a lookout for him, but their duties in respect to him arose only after they became aware of his presence and peril. If, after becoming aware that his mule was becoming frightened by the engine, or the noises being made by the operation of the engine, they failed to use every means at hand which a man of ordinary care and prudence would have had recourse to to allay the fright of the animal, such as abating the noises, stopping the engine, that being practical, etc., and injury resulted from such failure to the plaintiff, defendant would be liable in damages in this action. Glass v. Memphis & Charleston R. R. Co., 94 Ala. 581 [10 South. 215]; Ala. Great Southern R. R. Co. v. Linn, 103 Ala. 139 [15 South. 508]; 23 Am. & Eng. Ency. Law, pp. 744, 745." In 23 Am. &

Eng. Ency. of Law, p. 744, the law applicable to this class of cases is thus stated: "Although there is no obligation upon those in charge of a train to keep a lookout on adjacent premises or streets to observe the effect of the movement or noise of the train upon teams, yet, if the engineer sees that a team has been frightened and that an accident is imminent, it is his duty to cease the noise, and, if necessary, to stop the train, and a failure to do so constitutes negligence." See note to the case of Everett v. Great Northern Railway Co., 10 Am. & Eng. Ann. Cas. 294, and also note to the case of Johnson v. Southern Pacific Railroad Co., 3 Am. & Eng. Ann. Cas. 358, and cases cited.

The statement of the engineer that he did not see the peril in which the plaintiff was placed is not sufficient to exonerate the company where he is informed by his fireman that persons are in peril on the highway in close proximity to the track, whose animals are frightened by the sounding of the whistle. Both the law and a regard for the safety of the persons so in peril require the engineer to cease blowing his whistle for a time that injury to the party passing upon the highway may be prevented. This seems to have been the view of the trial court, as he instructed the jury: "If there was any negligence, it was by reason of the using of the whistle to such an extent as to cause this accident after they knew the peril the plaintiff was in." And, assuming that it was not negligence for the engineer to sound the whistle at the time he first did so in the cut, we are of the opinion, as before stated, in not ceasing to sound the same, after being notified by the fireman that the team was frightened, he was guilty of such negligence as rendered the defendant liable, if the jury found, as they evidently might have done, that the continuing of such whistling was the proximate cause of the injury.

It is contended by the appellant that there is a conflict between the instructions of the court of its own motion and instruction No. 2 given by the court at the request of the defendant, and also instruction No. 4, requested by defendant. It is also contended by the appellant that the verdict of the jury is contrary to instruction No. 2 given at the request of the defendant, and

also No. 4. The contention of the appellant that there is a con-
flict between the charge of the court given on its own motion and
the instructions given by the court at the request of the defendant
is in our opinion not tenable. That portion of instruction No. 2,
requested by the defendant and given by the court, that "unless
you find from the evidence that the engineer of the engine in
question knew of the peril in which the plaintiff was placed, and
blew the whistle with intent to frighten the plaintiff's team, or to
injure her or annoy her," was entirely inapplicable to this case,
as there was no evidence tending to prove that the engineer blew
the whistle with intent to frighten plaintiff's team or to injure or
annoy her. The latter part of the instruction, as follows: "Or
blew the said whistle heedlessly or recklessly, with unnecessary
and unusual noises, knowing her peril"—fairly construed, is not
inconsistent with the instruction of the court given on its own
motion, which is as follows: "If there was any negligence, it was
by reason of the using of the whistle to such an extent as to cause
this accident after they knew the peril the plaintiff was in." The
prominent idea conveyed by both instructions is that, if the
engineer unnecessarily continued the blowing of the whistle after
being informed of the peril of the plaintiff, he was guilty of negli-
gence. Assuming, however, that the instruction given at the re-
quest of the defendant stated the law correctly, there was some
evidence tending to prove that the blowing of the whistle was
done in an unusual manner, as one witness describing the whis-
tling testified that "it was pretty near all kinds, I guess," and on
cross-examination he testified, in answer to the following question:
"Q. Now, state whether or not from the time you first heard the
whistle starting to blow at what you call the west end of the cut
until it passed you it was continually whistling? A. Well, yes;
kind of a long whistle, and a few toots mixed in with it, is the
way I would express it." If the jury believed the evidence of the
witness for the plaintiff that the whistling "was pretty near all
kinds," and that it was not the usual whistle given at highway
crossings, then they might properly have found that the engineer
blew the said whistle heedlessly and recklessly with unnecessary
and unusual noises, knowing the plaintiff's peril.

We are of the opinion, therefore, that there was no material conflict between the charge of the court of its own motion and the instructions given at the request of the plaintiff before referred to. And we are also of the opinion that the verdict of the jury is not in conflict with the instructions and charge of the court. Under these instructions and charge, it was competent for the jury to find from all the evidence that the crossings easterly of the cut were not points of danger requiring the sounding of the whistle at the point where it was sounded in the cut and continuing the same after the engineer was notified of the peril of the plaintiff. Clearly, therefore, the verdict of the jury was justified on the ground that the cut and the Keliher crossing were not, under the circumstances, points of danger requiring the whistling in the cut; and the verdict of the jury was clearly justified also on the ground that the engineer was guilty of negligence in not ceasing to blow the whistle for a time after he was notified of the plaintiff's peril.

It is further contended by the defendant that the court erred and abused its discretion in refusing to direct the jury to find upon the particular questions of fact requested by the defendant, but as no exception was taken to the charge of the court to the jury, in effect leaving to the jury the discretion of finding or not finding upon the particular questions submitted by the defendant, that part of the charge is not subject to review by this court. We wish it distinctly understood that in making this decision we express no opinion as to the duty of the engineer in sounding the whistle continuously for the 80 rods before reaching a public crossing, and as to whether or not, under the provisions of our Code, he would be justified to cease whistling at any point within the 80 rods, as that question is not now before us.

Finding no error in the record, the judgment of the circuit court, and order denying a new trial are affirmed.