[No. 33356. Department One. February 2, 1956.]

WILLIE McGREGOR, *Respondent*, v. INTER-OCEAN INSURANCE COMPANY, *Appellant*.[1]

*James Leavy* and *Duane E. Taber*, for appellant.

*Charles T. Morbeck*, for respondent.

OTT, J.—Willie McGregor commenced this action against the Inter-Ocean Insurance Company, the insurer, to recover

[1]Reported in 292 P. (2d) 1054.

the sum alleged to be due her as the named beneficiary in the accident and health insurance policy of her deceased son. The only issue to be determined was whether the policy had lapsed before the death of the insured. The cause was tried to the court upon stipulated facts, and, from a judgment favorable to plaintiff, the defendant has appealed.

The stipulated facts are that the Inter-Ocean Insurance Company issued the policy to the insured, Johnnie Mc-Gregor, on March 1, 1953. Thereafter, the policy lapsed for nonpayment of premiums. May 5, 1954, Johnnie Mc-Gregor made application, in writing, for the reinstatement of his policy. The pertinent portions of the application stated:

"I hereby apply for reinstatement of my policy No. 782173 which lapsed for non-payment of premium when due under its terms. I enclose $7.30 month which is tendered in accordance with Standard Provision number three of said policy. . . .

"I understand and agree that the reinstatement of my policy shall not become effective until approved in writing by the company, . . .

"Dated at Pasco, Wn. this 5 day of May 1954

"Applicant sign here [signed] Johnnie McGregor"

The standard premium for one month for a person of the age of the insured was $7.30. The insurer acknowledged receipt of the premium and notified the insured, in writing. as follows:

"Inter-Ocean Insurance Company

"Accident, Health and Hospitalization Insurance

"Hereby acknowledges receipt of payment of $7.30 from the policyholder whose name, policy number, amount of premium and due date are shown on the opposite side of this receipt.

"This receipt will not be valid until signed by an official of the Company and countersigned by the agent whose name appears on the reverse side hereof.

"It is understood between the Company and the Insured that if this receipt is issued for a past due premium, its acceptance by the Company shall not be construed as a waiver of any of the conditions of the policy, and that no

liability will be assumed for any disability sustained by the Insured originating prior to such acceptance.

"If draft, check, or remittance other than cash is tendered in payment of the premium, the Company will accept same for collection purposes only and this receipt shall not be binding unless and until the Company actually receives the cash for such draft, check or remittance.

"Dated 5/5/54 (Reinstated) . [Signature illegible]

"Countersigned by [signed] M. J. Mailer Secretary

"(Not valid unless countersigned)"

[Reverse side.]

"OFFICIAL PREMIUM RECEIPT

"Inter-Ocean Insurance Company

"Executive Offices: 1200 American Building—Cincinnati 2, Ohio

 "Johnnie McGregor
 411 - South Idaho
 Pasco, Washington.

| "Amount Due | Date Due | Policy Number |
|---|---|---|
| 7:30 | 5/1/54 | 782173 |
| | | Pd to 6/1/54 |

"THANK YOU!"

The policy, as reinstated, contained the following thirty-day grace clause:

"SECTION 9. After the initial premium has been paid on this policy, a grace period of thirty days shall be allowed beyond the due date during which the premium may be paid. During said grace period this policy shall have the same force and effect as though the premium had been paid on or before the date due."

July 4, 1954, Johnnie McGregor was killed in an automobile accident.

The appellant contends that the policy had lapsed July 1, 1954; that an application to reinstate a policy does not reinstate it; and that the application was simply an offer, which was not accepted. Appellant further contends that it made a counteroffer of reinstatement, whereby it agreed to reinstate the policy as of May 5, 1954, upon the conditions that the due date would be May 1, 1954; and that the $7.30 tendered would pay for the policy until June 1, 1954;

and, finally, that the insured, by his silence and retention of the policy and receipt, accepted the counteroffer.

 The relationship between an insurer and the insured is purely contractual. *Trinity Universal Ins. Co. v. Willrich,* 13 Wn. (2d) 263, 272, 124 P. (2d) 950, 142 A. L. R. 1 (1942).

The application contained the phrase, "$7.30 month." The receipt which the insurer returned to the insured clearly indicated that the insurer was making a counteroffer to reinstate the policy upon the condition that the due date would be retroactive to May 1st, and that the premium paid for the policy until June 1, 1954. The terms upon which the insurer accepted the premium were definite and certain.

The written application was only a request for reinstatement and, by its terms, had to be accepted in writing by the insurer. Inasmuch as the receipt states that the premium paid was accepted for the month of May only, the modification of the application by the receipt could be either accepted or rejected by the insured.

 The general rule is stated in 44 C. J. S. 968, § 232, as follows:

"It is essential to the creation of a contract of insurance that there be an offer or proposal by one party and an acceptance by the other. . . . A person has a right to accept or reject insurance on terms and conditions fixed by the company; he is under no obligation to accept it, but, where he does accept, a contract exists."

1 Reinstatement, Contracts, 66, § 60, states:

"A reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer."

In *Coleman v. St. Paul & Tacoma Lbr. Co.,* 110 Wash. 259, 268, 188 Pac. 532 (1920), we said:

"It is the rule that, where the contract is alleged to consist, as it is in this instance, of an offer on the one side and the acceptance of the offer on the other, the acceptance, to constitute a binding contract, must be as broad as the offer, any conditions attached to the offer being in the nature of new proposals, which themselves must be accepted to make a binding contract. [Citing cases.]"

See, also, *St. Paul & Tacoma Lbr. Co. v. Fox,* 26 Wn. (2d) 109, 173 P. (2d) 194 (1946).

■ Here we are concerned with a cause of action based upon a contract. Respondent beneficiary had the burden of proving the terms of that contract by a fair preponderance of the evidence. *Ross v. Raymer,* 32 Wn. (2d) 128, 201 P. (2d) 129 (1948).

The stipulated facts establish that an offer was made, and that the offer, as made, was not accepted, but that a counteroffer was made. If a cause of action was established by the stipulated facts, it must rest upon the counteroffer. If the counteroffer was accepted, the receipt contains the terms of the contract. If it can be said that the counteroffer was not accepted, then there was no contract.

No equitable principles are involved in the issue presented by the agreed facts. There was no fraud, deception, or mutual mistake. The terms and conditions upon which reinstatement would be granted were clearly expressed and conveyed to the insured by the written provisions of the receipt.

■ Under the stipulated facts, the respondent did not prove by a preponderance of the evidence, or by any evidence, that the insurer accepted the offer for reinstatement as made in the insured's application. Having failed to sustain this burden, the cause of action must fail.

It is not necessary that we determine whether there was an acceptance of the counteroffer for the reason that, even if there was an acceptance, the insured allowed the policy so reinstated to lapse and was not insured on July 4, 1954, the date of his death.

The judgment appealed from is reversed.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.