HAAS, Special Administrator, Plaintiff and Respondent, vs. INTEGRITY MUTUAL INSURANCE COMPANY, Defendant and Appellant: DEJANOVICH, Defendant and Respondent.

*April 10—May 6, 1958.*

201

For the appellant there were briefs by *Thomas A. Woodrow* and *Benton, Bosser, Fulton, Menn & Nehs,* all of Appleton, and oral argument by *David L. Fulton.*

For the respondents there was a brief by *William J. Nuss* of Fond du Lac, for Paul Haas, special administrator, and by *Marth & Marth* of West Bend, for Peter Dejanovich, and oral argument by *Mr. Nuss.*

BROADFOOT, J. Sec. 209.06 (1), Stats. 1955, provided:

"No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation, or

warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

This section does away with the prior distinction between representations and warranties made in the negotiation of a contract of insurance. The legal effect of each upon the rights of the parties is made identical. A similar question was decided by the United States court of appeals in *Allstate Ins. Co. v. Moldenhauer* (7th Cir.), 193 Fed. (2d) 663. At page 665 of the opinion the court said:

"The question of materiality is a question of fact to be determined by the trier of facts. *Olson v. Herman Farmers' Mutual Ins. Co.* 187 Wis. 15, 19, 203 N. W. 743. The test is not that the insurer was influenced, but that the fact, if truthfully stated, might reasonably have influenced the insurer in deciding whether it should reject or accept the risk. Compare *Kline v. Washington National Ins. Co.* 217 Wis. 21, 258 N. W. 370, and *Spray v. Order of United Commercial Travelers of America,* 221 Wis. 329, 267 N. W. 50. And the courts of Wisconsin have said that if a question material to the risk is answered falsely, the risk is necessarily increased. *Demirjian v. New York Life Ins. Co.* 205 Wis. 71, 74, 236 N. W. 566."

That is a correct analysis and summarization of the law.

To support the judgment the plaintiff contends that the misrepresentations in the application were not material. It is undisputed in the evidence that the defendant Dejanovich was involved in a motor vehicle accident in September of 1955. Not only was the court record introduced but Dejanovich so admitted during the trial. The plaintiff points out that no personal injury resulted from that accident. The question in the application referred only to accidents and was not limited to those that resulted in personal injuries.

The plaintiff further contends that the proof in the record is insufficient to show that Dejanovich's driver's license had

been revoked prior to the date of the application. Among the exhibits in the case is a form MVD–111 which was a certification of the driver record of Dejanovich by the commissioner of the motor vehicle department of the state of Wisconsin. The plaintiff says this certification is insufficient proof because there was no testimony of any kind in the record to reveal the basis for the information appearing thereon nor is there any evidence of any kind to reveal or even permit an inference that any notice of suspension of driving privileges was ever in fact given to or received by Dejanovich prior to the fatal accident. The exhibit was *prima facie* evidence of the facts therein. During his cross-examination with reference to the accident on September 25, 1955, Dejanovich answered questions as follows:

"*Q.* And did you appear in the municipal court in Fond du Lac on September 27, 1955, in reference to charges preferred against you as a result of that accident? *A.* January 25, yes.

"The Court: Just a minute; he's talking about an accident in September.

"*A.* Oh, September; oh, you mean that one; you mean about that other one; yes.

"*Q.* Did you appear in court on that accident? *A.* Yes.

"*Q.* And have you heard the record that was read here a few minutes ago by the clerk of the municipal court? *A.* Yes, I heard that, yah.

"*Q.* And are you the same party that they were talking about? *A.* Yes, why naturally it was me, and naturally it wasn't my fault; it's all straightened out. What do you bring that up for?

"*Q.* Now, on and after September 27, 1955, did you receive any notice from the motor vehicle department that your license was being suspended? *A.* Yes."

The exhibit together with that testimony clearly established the falsity of the answers in the application as to his involvement in an accident and as to the suspension of his

driver's license, and that he had been arrested for a traffic violation.

The plaintiff also contends that the statement by Dejanovich that no company had ever rejected or canceled insurance is not material because the cancellation was by the defendant company and that it had in its files at the time the binder was issued all of the information necessary. Whether the misrepresentations were material or not were questions of fact to be determined by the trial court. The court found that the false answers were material to the risk and that such answers necessarily increased the risk. Those findings are amply supported by the record. The making of such misrepresentations affords a valid defense to the Insurance Company unless the doctrine of estoppel or waiver can be invoked properly under the circumstances of the case. Although the trial court based its decision upon the doctrine of estoppel the plaintiff does not so contend, but argues that the Insurance Company is liable to an innocent third person under the doctrine of waiver.

So far as the misrepresentation that no company had ever canceled a policy of insurance issued to Dejanovich is concerned, we agree that the doctrine of waiver applies. The Insurance Company had in its possession its prior file which was available to its underwriter at the time the binder was issued. However, that does not dispose of the three other misrepresentations. In 17 Appleman, Insurance Law and Practice, p. 18, sec. 9404, the author states the applicable rule as follows:

"The fact that the defendant had notice of the falsity of a part of an answer does not estop it to set up the falsity of another part. Similarly, an applicant will not be heard to say that, because the insurer knew that some of his answers were untrue, it was charged with knowledge that all might be untrue."

The other misrepresentations were equally material and increased the risk. Had the Insurance Company known of the other misrepresentations it might reasonably have been influenced thereby in deciding whether it should reject or accept the risk. The record indicates that it was contrary to company policy to insure risks with a driver record similar to that of Dejanovich. The Insurance Company at the time it issued the binder did not know that Dejanovich had been involved in a prior accident, that he had ever been arrested for a traffic violation, or that his driver's license had recently been suspended. Waiver involves the intentional relinquishment of a known right. It cannot be held that the Insurance Company had actual knowledge of these facts and there was no waiver as to them. The doctrine of estoppel is not applicable under the circumstances of this case, and the trial court was incorrect in concluding that because the Insurance Company had in its possession information and knowledge to the effect that one answer in the application was false it was estopped to deny that insurance was in effect on the date of the accident in question.

*By the Court.*—The judgment against the defendant Dejanovich is affirmed. The judgment so far as it permits the plaintiff to recover from the Insurance Company is reversed, and cause remanded with directions to enter a judgment dismissing the complaint of the plaintiff as to the Integrity Mutual Insurance Company, a Wisconsin corporation.

HALLOWS, J., took no part.