427 P.2d 21

Charles E. MODISETTE, Plaintiff-Appellee,

v.

FOUNDATION RESERVE INSURANCE
COMPANY, Inc., Defend-
ant-Appellant.

No. 8066.

Supreme Court of New Mexico.

May 1, 1967.

Leslie D. Ringer, Santa Fe, for appellant.

Eugene E. Brockman, Tucumcari, for appellee.

## OPINION

OMAN, Judge, Court of Appeals.

This is a suit on a comprehensive policy of automobile insurance issued by defendant to plaintiff. The policy included collision coverage, and it was stipulated that the insured vehicle was damaged in a collision on about January 21, 1964 in the amount of $2,370.16.

The trial court found and concluded that the policy of insurance, which was issued on about December 23, 1963, was in force on the date of the collision. He also concluded that no material or fraudulent misrepresentations were made by plaintiff in order to obtain the insurance, that defendant was estopped from claiming any fraud or misrepresentation on the part of the plaintiff,

and that plaintiff was entitled to recover judgment in the stipulated amount. Judgment was entered accordingly, and defendant appeals.

It is expressly provided in the initial sentence of the policy of insurance that defendant:

"Agrees with the insured [plaintiff], named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations * * *"

The very last provision of the policy, which appears as one of the conditions, is as follows:

"Declarations. By acceptance of this policy the named insured [plaintiff] agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

The declarations with which we are here concerned are printed and read as follows:

"11. Within the last 36 months no owner or driver named herein, or a resident of their household, has:

"(a) had insurance coverage declined, canceled, cancelation requested, or renewal refused;

"(b) been involved in more than one accident;

"(c) had a drivers license suspended, revoked, or placed on probation, or been cited for violation thereof;

"(d) been cited for Driving While Intoxicated, Reckless or Careless Driving, Hit and Run, Leaving the Scene of an Accident, Failure to Report an Accident, or for engaging in any speed contest;

"(e) been cited for three or more violations of motor vehicle laws, other than overtime parking;

"(f) or had a restricted driver's license, except for glasses;

"except as follows *

"If there is any exception to Declaration 11, I attach a Supplementary Rating Statement which is made a part of this policy and any renewals thereof.

"* Absence of any entry means 'No Exceptions.' "

After "e" there is typed, "yes—speeding 3 times." No other entry appears by way of answer or exception to any of these declarations.

Answers were taken from the plaintiff to questions of a like import on a printed application form, and after the answers were shown thereon it was signed by him. The answers to these questions are all in the negative, except there is an affirmative answer to the question:

"Has any driver been cited for violation of any motor vehicle laws, except parking, in past three years"?

By way of explanation there are written the words, "speeding—three."

The parties stipulated to the following facts pertinent to the issues on this appeal:

"2. On December 23, 1963 at the time of applying for the insurance in question, plaintiff told defendant's agent that he had had three or four speeding tickets in the preceding three years, and told him that at such time (the time of making the application) he didn't have a New Mexico drivers license; that he wouldn't get it back until January. He told the agent that he had a California license which he had got while working there, and showed him the California license. He told the agent also that he had had a previous insurance policy cancelled; that he had stopped paying for it because it was too expensive. He told the agent no other facts which would constitute exceptions to Declaration 11 of the policy.

"3. During the preceding 36 months, plaintiff had had insurance coverage on his automobile declined by Motors Insurance Corp. on October, 1963, as shown by Exhibit A hereto; had had such insurance cancelled by Motors Insurance Corp. in July, 1962, and by Western Farm Bureau Mutual in January, 1963. The grounds for declination by Motors Insur-

ance Corp. in October, 1963, were not stated. The cancellations mentioned all were for non-payment of premium. The policy cancelled by Motors Insurance Corp. in July, 1962, was superseded by simple interest coverage for the protection of a mortgagee.

"4. During the same period, plaintiff's driver's license was put under probation in March, 1961, and in July, 1962, and was suspended in April, 1963.

"5. During the same period, he was cited for speeding four times, as stated to the agent, and in addition was cited for reckless driving in April, 1962, and for reckless driving by drag racing in January, 1963.

"6. No question as to the truthfulness or accuracy of plaintiff's statements to its agent were raised by the defendant until after the accident complained of.

\*     \*     \*     \*     \*     \*

"8. At the time of taking the application from plaintiff, defendant's agent discussed the desired facts with plaintiff as stated above in paragraph 2, and then on a form of his own he prepared the application. Plaintiff then signed it."

It is undisputed that defendant follows a merit rating plan in writing automobile insurance. An applicant is assigned certain points, or demerits, for exceptions to the declarations contained under declaration 11 above quoted. The answers made by an applicant for insurance to an agent are the basis for the initial assignments of points. The total number of these points determines whether or not the agent can issue the policy. If the points exceed thirty in number, the application must be referred to the home offices of the company for evaluation and determination as to whether or not the policy will be issued, and, if issued, the premium rate.

Had plaintiff made complete and truthful statements of exceptions to declaration 11, he would have been assigned thirty-seven points. Even if we deduct the proper points for the fourth speeding ticket, which it is stipulated was made known to the agent, we still have a total of thirty-three points, which would have required the submission of the application to defendant's home office. However, in view of the information furnished by plaintiff, the agent proceeded to issue the policy.

The defendant's vice-president in charge of claims testified that had all the facts been known, the defendant's application for insurance would have been rejected. This evidence is undisputed.

It is also undisputed that even when the agent issues the policy, as was done in this case, the procedures at the home office of defendant require about thirty days before the underwriting department finally approves or disapproves the policy. In this case the application was taken on December 23, 1963; the policy was dated and issued on

December 24; the daily, or copy of the policy, was received in the home office on December 26; the accident occurred and defendant's agent was so notified on January 21, 1964; notice of the accident was received at the home office on January 27; on January 31 defendant undertook to void or cancel the policy and wrote plaintiff so notifying him; and on March 30 plaintiff filed his suit.

Defendant has asserted ten separate points upon which he relies for reversal. These points, with one exception, are attacks on the court's findings and conclusions and asserted errors of the court in failing to make certain requested findings and conclusions. The one point, which does not relate to the findings and conclusions, is a claim of error on the part of the trial court in excluding certain tendered evidence. This point is in no way material to our determination of this appeal.

The undisputed facts, and in particular the stipulated facts, demonstrate unmistakably that full and complete disclosure by plaintiff of all information called for by the declarations of the policy was not made.

■ A policy of insurance is a contract between the insurer and the insured. McGregor v. Inter-Ocean Ins. Co., 48 Wash.2d 268, 292 P.2d 1054; McKanna v. Continental Assur. Co., 165 Kan. 289, 194 P.2d 515; 12 Appleman, Insurance Law & Practice § 7001 (1943).

■ An application for insurance is a mere offer or proposal for a contract of insurance. Before a contract of insurance is effected and any contractual relationship exists between the parties, it is necessary that the application be accepted by the insurer, since insurance companies are not compelled to accept every application presented and may stipulate upon what terms and for what period of time the risk will be accepted. Porter v. Butte Farmers Mut. Ins. Co., 68 N.M. 175, 360 P.2d 372. The insurer has the right to set up its own standards, to avail itself of its own experience and the experience of others, to secure information from the applicant, and to rely upon the information furnished as true and to govern its actions accordingly. Chamberlain v. National Life & Accident Ins. Co., 256 Ky. 548, 76 S.W.2d 628; 12 Appleman, Insurance Law & Practice § 7292 (1943).

■ The obligation to deal fairly and honestly rests equally upon the insurer and the insured. Commercial Cas. Ins. Co. v. Schmidt, 166 Md. 562, 171 A. 725; Chaachou v. American Cent. Ins. Co., 241 F.2d 889 (5th Cir. 1957); Prudential Ins. Co. v. Ford, 37 Del.Ch. 425, 144 A.2d 234; American Cas. Co. v. Ford, 41 Del.Ch. 39, 187 A.2d 425; Brinkoetter v. Pyramid Life Ins. Co., 377 S.W.2d 560 (Mo.App.1964); Gallagher v. New England Mut. Life Ins. Co., 33 N.J.Super. 128, 109 A.2d 457; George v. Guarantee Mut. Life Co., 144 Neb. 285, 13 N.W.2d 176; Scott v. Continental Assur.

Co., 144 N.E.2d 904 (Ohio App.1957), reversed on other grounds, 167 Ohio St. 515, 150 N.E.2d 38; Mutual Life Ins. Co. v. Denton, 93 Fla. 276, 112 So. 53; 12 Appleman, Insurance Law & Practice § 7291 (1943).

■ The general rule, and the rule consistent with principles of contract and the duty of fair dealing, which is the duty imposed upon both the insurer and the insured, is that if misrepresentations be made, or information withheld, and such be material to the contract, then it makes no difference whether the party acted fraudulently, negligently, or innocently. Bennett v. Finley, 54 N.M. 139, 215 P.2d 1013; Jones v. Friedman, 57 N.M. 361, 258 P.2d 1131; Ham v. Hart, 58 N.M. 550, 273 P.2d 748; Citizens' Ins. Co. v. Bailey, 28 F.2d 272 (8th Cir. 1928); Billington v. Prudential Ins. Co., 254 F.2d 428 (7th Cir. 1958); Michael v. World Ins. Co., 254 F.2d 663 (6th Cir. 1958); Tolbert v. Mutual Benefit Life Ins. Co., 236 N.C. 416, 72 S.E.2d 915; Bushfield v. World Mutual Health & Accident Ins. Co., 80 S.D. 341, 123 N.W.2d 327; Grand Fraternity v. Keatley, 27 Del. 308, 88 A. 553; United States Fidelity & Guaranty Co. v. First Nat. Bank, 137 Ill.App. 382, aff'd. 233 Ill. 475, 84 N.E. 670; Higgins v. John Hancock Mut. Life Ins. Co., 20 Misc. 231, 45 N.Y.S. 414. See also 12 Appleman, Insurance Law & Practice § 7293 (1943); 7 Couch, Insurance §§ 35:118–120 (2d ed. 1961).

As stated by the supreme court of Indiana in Metropolitan Life Ins. Co. v. Becraft, 213 Ind. 378, 12 N.E.2d 952, 115 A.L.R. 93:

"Whether there was fraudulent intent or actual fraud is immaterial. An unqualified statement that a fact exists or does not exist, made for the purpose of inducing another to act, implies that the person who makes it is acquainted with the facts; and, if action is induced by the representation and false statement, the law will impute to him who made the false representation a fraudulent purpose. * * * It is the injury caused by the misrepresentation of fact that the law protects against. If the misrepresentation was brought about by forgetfullness [sic] or mistake it is just as injurious as an intentional fraud. It accomplishes a fraud upon the other contracting party by inducing him to act upon a false premise, where he would not have acted had he known the truth. Whether it be caused by negligence, or actual fraudulent purpose, good intention or bad, the result is the same. There is no meeting of the minds * * *."

If the information withheld, or the misrepresentations made, were material, then defendant was entitled to void the policy, in the absence of waiver or estoppel. The question of estoppel is presented and will be hereafter discussed.

■■ A representation or concealment of a fact is material if it operates as an

inducement to the insurer to enter into the contract, where, except for such inducement, it would not have done so, or would have charged a higher premium. 9 Couch, Insurance § 38:27 (2d ed. 1962); Restatement, Contracts § 470(2); 45 C.J.S. Insurance § 473(4) (d) at 177. Ordinarily, the question of materiality is one of fact. Mayflower Ins. Exch. v. Gilmont, 280 F.2d 13 (9th Cir. 1960); 7 Couch, Insurance § 35:93.

The trial court found:

"That in the application for insurance, the Plaintiff did not make nor fail to disclose any statement or matter of a material fact sufficient to void the policy."

Defendant urges that this finding is unsupported by substantial evidence, and that the court erred in making this finding and in refusing to make a contrary finding that the false information furnished was material to the execution of the policy.

In addition to what has been hereinabove set forth bearing upon this question, the policy expressly provides: " * * * that this policy is issued in reliance upon the truth of such representations * * *." The reference is to the representations made in the declarations.

On the application form, which was signed by plaintiff and to which reference is above made, there appears the following printed language: "Failure to give correct answers may possibly cause an uprating in premium."

It is not clear from the record whether this language on the application form did or did not come to the attention of plaintiff. His testimony concerning his examination of the application at the time he signed it was as follows:

"Q I hand you Plaintiff's exhibit two and ask you is that the copy of application that you signed?

"A Yes, sir.

"Q Do you remember whether or not you read it over when it was handed to you?

"A I don't remember, I think I just glanced at it.

"Q Did you do any writing on that with the exception of signing your name to it?

"A No, sir."

Unless it can be said that this printed language on the application form constitutes substantial evidence in support of the court's finding, then the finding must fail and the court should have made a contrary finding. It is our view that this language on the application form does not give substantial support to the finding, and that the information withheld and the misrepresentations made were material. Thus, the policy was voidable.

The statements in the declarations are expressly made a part of the policy, made the agreements and representations of the plaintiff, made conditions of the policy, and their truth made a basis for the issuance of the policy. The representations being false and material to the risk, and the defendant having relied thereon in entering into the contract, the necessary grounds to void the policy were present. Safeco Ins. Co. v. Gonacha, 142 Colo. 170, 350 P.2d 189; 12 Appleman, Insurance Law & Practice § 7295 (1943).

■■■ However, an insurer may waive its right to assert a forfeiture, or be estopped from asserting this right. Before an insurer can be held to have waived, or be estopped from asserting a right of forfeiture, it must have had knowledge of the facts. Harris v. Allstate Ins. Co., 249 S.W.2d 669 (Tex.Civ.App.1952).

The trial court concluded: "That the Defendant is estopped from claiming any fraud or misrepresentation on the part of the Plaintiff in obtaining the insurance policy."

The trial court also refused to adopt defendant's requested conclusion that: "Defendant in no way waived its right to avoid the purported contract of insurance."

The principal finding of fact, if not the only one, upon which the court's conclusion was based, reads as follows:

"That at the time the application for insurance was made and for some 28 days after the policy was issued, the Defendant's agents and employees had the record of Plaintiff's traffic violations and all the matters upon which the Defendant seeks to void the policy, and the Defendant having this information could have refused to issue the policy or could have cancelled it before the time of the loss."

■■■ Some twenty-eight days had elapsed between the date of the application and the date of the accident. However, delay or lapse of time alone does not constitute laches or work an estoppel. Winn v. Shugart, 112 F.2d 617 (10th Cir. 1940); Borserine v. Maryland Cas. Co., 112 F.2d 409 (8th Cir. 1940); Algodones Land & Town Co. v. Frank, 21 N.M. 82, 153 P. 1032; 28 Am.Jur.2d, Estoppel and Waiver § 32 at 636; 31 C.J.S. Estoppel § 66 at 402.

It appears from the record that another policy of automobile insurance was issued by defendant to plaintiff on March 26, 1963, and this policy was subsequently cancelled. Plaintiff's answers to questions contained in the declarations in that policy, which are almost identical with the material portions of declaration 11 in the policy here involved, were all in the negative.

Defendant endeavored to introduce into evidence a record received from a state office on April 25, 1963, concerning plain-

tiff's driving record, and which defendant apparently used as a basis for cancellation of the prior policy. However, plaintiff objected to the introduction of this record, the objection was sustained, and consequently the contents of that record were neither before the trial court nor are they before this court. Just what was contained in that record is not made to appear by the transcript.

The evidence before the court, and which is contained in the transcript, consists only of the answers to the questions in the declarations concerning plaintiff's driving record as of March 26, 1963, and, as already stated, these answers were all in the negative. Thus, the evidence is that the plaintiff had no record of traffic violations, because his answers are to the effect that he had never been cited for any violations.

In any event, there is no evidence in the record that defendant's agents and employees had the record of plaintiff's traffic violations as of April 25, 1963, and certainly there is nothing to even suggest they had such a record as of December 23, 1963, or at any time thereafter and prior to the date of the accident. There is nothing in the record to show defendant had knowledge as of the date of the application, or as of the date of the accident, that insurance coverage had been declined plaintiff by Motors Insurance Company on October 1, 1963, or that he had insur-

ance cancelled by Motors Insurance Corp. in July 1962, and by Western Farm Bureau Mutual in January 1963.

The court's finding that "* * Defendant's agents and employees had the record of Plaintiff's traffic violations and all matters upon which the Defendant seeks to void the policy," just has no support in the evidence. Plaintiff apparently did have in its files at the home office a record of the cancellation of the earlier policy. Notice of this one item of concealment, if defendant can be charged with such notice, does not operate as notice of all the other items either concealed or misstated by plaintiff. First National Ben. Soc. v. Fiske, 55 Ariz. 290, 101 P.2d 205; Frederick v. Federal Life Ins. Co., 13 Cal.App.2d 585, 57 P.2d 235; San Francisco Lathing Co. v. Penn. Mut. Life Ins. Co., 144 Cal.App.2d 181, 300 P.2d 715; Haas v. Integrity Mutuals Ins. Co., 4 Wis.2d 198, 90 N.W.2d 146.

Recognition of the processes involved in the sales, receipt of applications, handling and checking of applications, the issuance of policies, the cancellation of policies, and other necessary procedures in the orderly and proper conduct of an insurance business compels a recognition of the fact that every sales agent and other officer or employee of an insurance company cannot be charged with notice of all that exists in the company's files. See

Taylor v. Home Life Ins. Co., 125 Pa. Super. 529, 189 A. 722; Schrader v. Prudential Ins. Co., 280 F.2d 355 (5th Cir. 1960); McCoy v. Pacific Coast Fire Ins. Co., 164 So.2d 386 (La.App.1964).

It follows from what has been stated that the trial court erred in entering judgment for the plaintiff, and that this cause should be remanded with instructions to set aside the judgment and enter judgment for the defendant dismissing the plaintiff's complaint.

It is so ordered.

NOBLE and CARMODY, JJ., concur.

CHAVEZ, C. J., and MOISE, J., dissent.

MOISE, Justice (dissenting).

In my view, it is impossible to find a material distinction between the facts in this case and those in Tsosie v. Foundation Reserve Insurance Company, 77 N.M. 671, 427 P.2d 29, decided this date, and accordingly I am unable to justify a result here directly contrary to that reached in Tsosie. Neither do I see any basis for overruling findings that the misrepresentations relied on were not material. This was a question of fact to be resolved by the trier of the facts, Mayflower Ins. Exch. v. Gilmont, 280 F.2d 13, 89 A.L.R.2d 1019 (1960), and not to be reversed by us unless unsupported by substantial evidence. Gilmer v. Gilmer,

77 N.M. 137, 419 P.2d 976 (1966); Pack v. Read, 77 N.M. 76, 419 P.2d 453 (1966).

The majority having concluded otherwise, I respectfully dissent.

CHAVEZ, C. J., concurs.