1999-NMCA-121

989 P.2d 896

**Christie HOWARD, Individually, as Personal Representative of the Estate of Marion Bunyan Howard II, Deceased, and as Guardian and Next Friend of Jack Wesley Howard, a Minor Child, Plaintiff–Appellant,**

v.

**QUALITY XPRESS, INC., Rubin Aguirre and Francisco Hernandez, Defendants,**

v.

**Guaranty National Insurance Company, Garnishee–Appellee.**

No. 19,714.

Court of Appeals of New Mexico.

Aug. 5, 1999.

Certiorari Denied, No. 25,928, Sept. 13, 1999.

Ronald G. Harris, Foster, Johnson, Harris, & McDonald, Albuquerque, for Appellant.

Victoria D. Armstrong, Atwood, Malone, Turner & Sabin, P.A., Roswell, for Appellee.

## OPINION

WECHSLER, Judge.

{1} Appellant Christie Howard, individually and in her capacities as personal representative of the estate of Marion Howard and as next friend of Wesley Howard, appeals the district court's order dismissing with prejudice her garnishment proceeding against Guaranty National Insurance Company (Guaranty). Appellant contends that Guaranty's notice of cancellation to its insured, Quality Xpress, Inc. (Quality), was ineffective because Guaranty failed to comply with Federal Highway Administration, Department of Transportation regulations (DOT regulations). She additionally argues that a garnishment proceeding is an appropriate action to determine this issue. Because we affirm

the district court's dismissal, we do not address the second issue.

## Background

{2} Appellant obtained a default judgment against Quality, a trucking company, and two of its employees, for damages stemming from a July 19, 1996 accident in which Marion Howard died. Appellant commenced a garnishment proceeding against Guaranty, which had insured Quality, to collect on the default judgment.

{3} Guaranty denied any liability to Appellant, claiming that the insurance policy it had issued to Quality had been canceled prior to the date of the accident. Appellant argued that because Guaranty failed to comply with DOT regulations in canceling the policy, the cancellation was not effective and the policy remained in force. Guaranty countered that it was not required to comply with DOT regulations because Quality had not indicated on its application that it engaged in interstate trucking. Guaranty asserted that state law applied and that it had effectively canceled the policy in accordance with NMSA 1978, § 59A–18–29 (1984) (requiring ten days' notice of cancellation). Guaranty further contended that even if it had to comply with DOT regulations, the accident occurred after the period of notice required by the regulations; thus, the policy was no longer in force at the time of the accident. The district court granted Guaranty's motion to dismiss the garnishment proceeding on the ground that the claim against the garnishee was contingent and unliquidated because the policy had been effectively canceled prior to the accident. Appellant contends that the district court erred as a matter of law in concluding that DOT regulations did not apply and in improperly granting the motion to dismiss.

## Standard of Review

{4} The district court considered matters outside of the pleadings; therefore we treat the motion to dismiss as a motion for summary judgment. *See Williams v. Central Consol. Sch. Dist.*, 1998–NMCA–006, ¶ 7, 124 N.M. 488, 952 P.2d 978. Summary judgment is proper when there are no issues of materi-

al fact and the moving party is entitled to a judgment as a matter of law. *See id.* In the present case, there are no genuine issues of material fact. The issue is one of law, whether DOT regulations apply to Guaranty's policy issued to Quality, and if so, whether Guaranty properly complied with the regulations.

## Discussion

{5} Quality applied with Guaranty for commercial auto insurance on November 16, 1995 for its business of hauling farm products and produce. Guaranty's application included a question of whether an MSC–90 endorsement was required and a blank space to "List all States and Principal Cities through which your Vehicles will operate." Quality checked "no" to the MSC–90 endorsement requirement and did not list any states or cities. An MSC–90 is an endorsement form required by the DOT as part of its requirement of financial responsibility of "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce." 49 C.F.R. §§ 387.3(a), 387.7(d)(1) (1998); *see generally Jackson v. O'Shields*, 101 F.3d 1083, 1085 (5th Cir.1996). Quality also left blank the question regarding "filings required" for filing of insurance documentation in states where Quality traveled.

{6} Guaranty issued a one-year policy which went into effect on November 16, 1995. After Quality failed to pay the premium, Guaranty sent a notice of cancellation for nonpayment of premium on March 28, 1996 to be effective April 10, 1996 in accordance with Section 59A–18–29(A) requiring ten days' notice.

{7} During depositions in the underlying wrongful death suit, Quality's owner and a member of Quality's board of directors both indicated that Quality occasionally traveled from New Mexico into Texas and Colorado to make deliveries. Participation in interstate transportation of property subjects carriers to compliance with DOT regulations. *See* 49 C.F.R. § 387.3(a). In order to cancel a policy and endorsements under these regulations, an insured must give thirty-five days' notice. *See* 49 C.F.R. § 387.7(b)(1).

Policies of insurance, surety bonds, and endorsements required under this section shall remain in effect continuously until terminated. Cancellation may be effected by the insurer or the insured motor carrier giving 35 days' notice in writing to the other. The 35 days' notice shall commence to run from the date the notice is mailed. Proof of mailing shall be sufficient proof of notice.

*Id.* Additionally, cancellation of a policy with an MSC–90 endorsement requires the insurer to provide notice to the Interstate Commerce Commission (ICC) if the insured is subject to its jurisdiction. *See* 49 C.F.R. § 387.15, illus. I (1998).

{8} According to Appellant, because Quality engaged in interstate commerce, Guaranty's policy automatically incorporates DOT regulations because of public policy and compulsory insurance requirements. As a consequence, Guaranty was required to provide thirty-five days' notice in accordance with 49 C.F.R. § 387.7(b)(1). Appellant contends that Guaranty's failure to so comply rendered its notice of cancellation void. Appellant concludes, therefore, that Guaranty's policy continued to be in effect at the time of the accident.

■ {9} Appellant relies on case law indicating that compulsory insurance statutes become part of the applicable policy. *See Keystone Mut. Cas. Co. v. Hinds*, 180 Md. 676, 26 A.2d 761, 762–63 (1942). Even accepting this premise, it is inapplicable in this case because the Guaranty policy was issued (and later canceled) in accordance with New Mexico law, and Quality did not request coverage which would impose DOT regulations on the policy. Appellant further relies upon *Hagans v. Glens Falls Ins. Co.*, 465 F.2d 1249, 1252–53 (10th Cir.1972), for the proposition that the Tenth Circuit will read an ICC endorsement into a policy, even where it is lacking. We do not believe that *Hagans* stands for any such proposition because the parties and the court in that case assumed that the endorsement was present. *See id.* at 1252

{10} While we agree that it appears from the record that Quality was engaged in interstate commerce requiring it to have complied with DOT regulations, nothing in the record indicates that Guaranty, as an insurer, had any basis to believe that the insurance contract needed to so comply. Guaranty complied with state law, but Quality did not inform Guaranty of its interstate travels. Precisely the opposite, Quality chose to answer "no" and leave blank the questions regarding interstate travel and filings required. Quality only requested intrastate coverage. The DOT regulations only apply to "for-hire motor carriers operating ... in interstate or foreign commerce," 49 C.F.R. § 387.3(a), and "[a]ny person ... who knowingly violates the rules of this subpart shall be liable to the United States for civil penalty." 49 C.F.R. § 387.17. Thus, the regulatory scheme appears to place the burden of compliance with the compulsory insurance coverage requirements upon the motor carrier, not the insurer.

■ {11} We decline to impose responsibility on Guaranty to comply with DOT regulations on Quality's behalf when it had no knowledge or awareness that Quality was engaged in interstate commerce. As the insured, Quality had knowledge of the information that was relevant to Guaranty's assumption of the insurance risk and had an obligation to provide the requested pertinent information. *See Modisette v. Foundation Reserve Ins. Co.*, 77 N.M. 661, 666, 427 P.2d 21, 25 (1967) ("The obligation to deal fairly and honestly rests equally upon the insurer and the insured."); 6 Lee R. Russ, *Couch on Insurance 3d* § 81.1, at 81–9; § 81.47, at 81–72 (1997). Guaranty specifically asked on the application form whether Quality required endorsements for interstate travel and filings for other states. The answers to these questions were material to Guaranty's issuance of the policy because they directly affected the steps necessary for Guaranty to meet ICC regulatory requirements on behalf of Quality and may have affected the premium charged. *See Modisette*, 77 N.M. at 667–68, 427 P.2d at 26 ("A representation or concealment of a fact is material if it operates as an inducement to the insurer to enter into the contract, where, except for such inducement, it would not have done so, or would have charged a higher premium.");

*see generally* 6 Russ, *supra*, § 90:15, at 90–21.

■ {12} We make no conclusion of any intentional misrepresentations on Quality's part. However, neither do we place the burden on Guaranty to investigate to determine if Quality had correctly provided the information. *See Modisette*, 77 N.M. at 666, 427 P.2d at 25; *Rael v. American Estate Life Ins. Co.*, 79 N.M. 379, 381, 444 P.2d 290, 292 (1968) (holding that failure to disclose relevant health information materially affected issuance of policy). Although Quality left some requested information spaces blank, the blanks were consistent with Quality's indication that it did not require an MSC–90 endorsement. Guaranty did not have reason to know that Quality incorrectly responded to the requests.

*Conclusion*

■ {13} Guaranty properly canceled Quality's insurance policy in accordance with state law and was not required to comply with DOT regulations of which it had no reason to know applied to its policy. The cancellation of the policy terminated the liability of the insurer not only with respect to the insured, but also with respect to third persons who are creditors of the insured and who bring attachment or garnishment proceedings against the insured. *See Roon v. Van Schouwen*, 406 Ill. 617, 94 N.E.2d 880, 881–82 (1950); 2 Russ, *supra*, § 30:24, at 30–32. We affirm the district court's granting of the motion to dismiss the garnishment proceeding.

{14} **IT IS SO ORDERED.**

PICKARD, C.J., and APODACA, J., concur.